# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### CHICAGO, ILLINOIS

| | | |
|---|---|---|
| **Rony Chavez AGUILAR, *et al.*,** | ) | |
| | ) | **Case No. 17-cv-2296** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Robert M. Dow, Jr.** |
| **vs.** | ) | |
| | ) | **Presentment:** |
| **U.S. IMMIGRATION AND CUSTOMS** | ) | **November 30, 2017** |
| **ENFORCEMENT CHICAGO FIELD** | ) | |
| **OFFICE, *et al.*,[1]** | ) | |
| | ) | |
| **Defendants.** | ) | |


## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### SECOND AMENDED COMPLAINT

---

[1] Elaine C. Duke became Acting Secretary of Homeland Security on July 31, 2017, automatically substituting for John F. Kelly as a party in accordance with Federal Rule of Civil Procedure 25(d).

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ ......1

OVERVIEW OF ICE DETENTION PRACTICES ......................................... ......2

STANDARD OF REVIEW ................................................................ ......4

   I.  Federal Rule of Civil Procedure 12(b)(1)................................................. ......4

   II.  Federal Rule of Civil Procedure (12(b)(6) ............................................ ......5

FACTS AND PROCEDURAL HISTORY ..................................................... ......5

ARGUMENT ................................................................................... ......5

   I.  The Court must dismiss the second amended complaint because Plaintiffs lacks Article III standing to assert the claims and because their claims are moot.................................................................................. ......6

   II.  The INA mandates that the Court dismiss this action for lack of subject-matter jurisdiction ...................................................................... ......8

   III.  This Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a cognizable claim for relief under either the INA or the Constitution....................... .....12

       A.  The INA does not require Defendants to alter their practices........... .....12

       B.  The Fourth Amendment does not require Defendants to obtain judicial review or determination of probable cause ....................................... .....14

       C.  The Fifth Amendment does not require defendants to present indivduals for an initial hearing or for judicial review of probable cause for detention within 48 hours ................................................. .....20

           1.  Defendants do not violate Plaintiffs' procedural due process rights................................................................ .....20

           2.  Defendants do not violate Plaintiffs' substantive due process rights................................................................ .....23

CONCLUSION ................................................................................ .....25

CERTIFICATE OF SERVICE

Cases

*Abel* v. United States,
  362 U.S. 217 (1960)............................................................................ 14, passim

*Aguilar v. U.S. ICE*, 510 F.3d 1 (1st Cir. 2007) .................................................9, 10

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) ............................................4

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
  572 F.3d 440 (7th Cir. 2009) ....................................................................... 4, 5, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................5

*Botezatu v. INS*,
  195 F.3d 311 (7th Cir. 1999) ...............................................................................11

*Buquer v. City of Indianapolis*,
  No. 1:11-cv-00708-SEB, 2013 WL 1332158 (S.D. Ind. Mar. 28, 2013).............19

*Chavez-Raya v. INS*,
  519 F.2d 397 (7th Cir. 1975) ...............................................................................15

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)..................................................................................................7

*Coleman v. Frantz*,
  754 F.2d 719 (7th Cir. 1985) ...............................................................................23

*Cortez-Acosta v INS*,
234 F.3d 476 (9th Cir. 2000) ........................................................................ 17, 23

*Cty. of Riverside v. McLaughlin*,
500 U.S. 44 (1991).................................................................................. 5, passim

*Farnik v. F.D.I.C.*,
707 F.3d 717 (7th Cir. 2013) ..................................................................................4

*Fong Yue Ting v. United States*,
149 U.S. 698 (1893)...............................................................................................17

*Gerstein v. Pugh*,
420 U.S. 103(1975)................................................................................. 14, passim

*Gomez-Chavez v. Perryman*,
308 F.3d 796 (7th Cir. 2002) ..............................................................................12

*Gonzalez v. ICE*,
2017 WL 2559616 (C.D. Cal. June 12, 2017)........................................ 13, 14, 21

*Hernandez v. I.N.S.*,
No. 09-3271-RDR, 2010 WL 126179 (D. Kan. Jan. 11, 2010)...........................13

*In Re Joseph*,
22 I. & N. Dec. 799 (BIA 1999) ........................................................................10

*INS v. Lopez-Mendoza*,
468 U.S. 1032 (1984)............................................................................... 15, 25

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ................................................................. 9, passim

*Jimenez-Angeles v. Ashcroft*,
  291 F.3d 594 (9th Cir. 2002) ................................................................12

*Kingdomware Technologies, Inc. v. United States*,
  ⸺ U.S. ⸺, 136 S.Ct. 1969, 195 L.Ed.2d 334 (2016) ....................................4

*Lightfoot v. Cendant Mortg*. Corp.,
  137 S. Ct. 553 (2017)..........................................................................4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................4, 7

*Mathews v. Diaz*,
  426 U.S. 67 (1976)...........................................................................20

*Mathews v. Eldridge*
  424 U.S. 319 (1976) ..................................................................... 21, 22

*Michalowicz v. Village of Beckford Park*,
  528 F.3d 530 (7th Cir. 2008) ...............................................................20

*Morales-Izquierdo v. Gonzalez*,
  486 F.3d 484 (9th Cir. 2007) ...............................................................17

*Morrissey v. Brewer*,
  408 U.S. 471 (1972).........................................................................20

*Newman–Green, Inc. v. Alfonzo–Larrain*,
  490 U.S. 826 (1989)..........................................................................7

*Ozinga v. Price*,
  855 F.3d 730 (7th Cir. 2017) ..............................................................5, 7

*Reaseguros, S.A. v. M/V Sky Reefer*,
    515 U.S. 528 (1995).............................................................................19

*Reno v. Am.-Arab Anti-Discrimination,*
    *Com.*, 525 U.S. 471 (1999) ............................................................9, 11

*Reno v. Flores*,
    507 U.S. 292 (1993).............................................................. 19, 20, 24

*Rhoden v. United States*,
    55 F.3d 428 (9th Cir. 1995) ..........................................................16

*Rochin v. California*,
    342 U.S. 165 (1952)........................................................................24

*Sharif ex rel. Sharif v. Ashcroft*,
    280 F.3d 786 (7th Cir. 2002) ........................................................11

*Silva v.United States*,
    866 F.3d 938 (8th Cir. 2017) ........................................................12

*United States v. Cepeda-Luna*,
    989 F.2d 353 (9th Cir. 1993) .................................................. 17, 23

*United States v. Encarnacion*,
    239 F.3d 395 (1st Cir. 2001) .........................................................18

*United States v. Sotoj-Lopez*,
    603 F. 2d 789 (9th Cir. 1979) .......................................................18

*United States v. Tejada*,
    255 F.3d 1 (1st Cir. 2001)................................................... 13, passim

*Wellness Community-National v. Wellness House*,
    70 F.3d 46 (7th Cir. 1995) ..............................................................7

*Woodby v. INS*,
  385 U.S. 276 (1966) .......................................................................... 17, 23

## Statutes

6 U.S.C. § 557 .................................................................................. 12, 19

8 U.S.C. § 1101 ......................................................................................3

8 U.S.C. § 1225(b)(1)(A) .......................................................................22

8 U.S.C. § 1226(a) ......................................................................... 14, 15, 22

8 U.S.C. § 1226(c) ..................................................................................2

8 U.S.C. § 1229(b)(1) ...................................................................... 13, 20, 21

8 U.S.C. § 1252 ............................................................................ 9, 10, 11, 12

8 U.S.C. § 1252(a)(2)(D) .........................................................................11

8 U.S.C. § 1252(a)(5) ...................................................................... 8, 9, 10, 24

8 U.S.C. § 1252(b)(9) .........................................................................9, 10

8 U.S.C. § 1252(g) .......................................................................... 11, 12

8 U.S.C. § 1357 ....................................................................................2, 3

8 U.S.C. § 1357(a)(2) ...................................................................... 12, passim

28 U.S.C. § 2241 ....................................................................................10

Regulations

8 C.F.R. § 236.1(c)(8) ...................................................................................9

8 C.F.R. § 236.1(d)(1) ........................................................................... 10, 22

8 C.F.R. § 287.3 .................................................................................... 10, 19

8 C.F.R. § 287.3(a) ....................................................................................12

8 C.F.R. § 287.3(b) ...................................................................................22

8 C.F.R. § 287.3(c) ...................................................................................22

8 C.F.R. § 287.3(d) ............................................................................. 10, 15

8 C.F.R. § 287.5(e)(2) ................................................................................15

8 C.F.R. § 1003.19 ...................................................................................22

8 C.F.R. § 1003.19(e) ................................................................................21

8 C.F.R. § 1236.1(d)(1) .............................................................................21

<u>Federal Rule of Civil Procedure</u>

12(b)(1) ............................................................................................ 2, passim

12(b)(6) ............................................................................................ 5, passim

25(d) ......................................................................................................1

<u>Federal Rule of Criminal Procedure</u>

5(a) ...................................................................................................................18

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO, ILLINOIS

| | | |
|---|---|---|
| Rony Chavez AGUILAR, *et al.*, | ) | |
| | ) | Case No. 17-cv-2296 |
| Plaintiffs, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| vs. | ) | |
| | ) | Presentment: |
| U.S. IMMIGRATION AND CUSTOMS | ) | November 30, 2017 |
| ENFORCEMENT CHICAGO FIELD | ) | |
| OFFICE, *et al.*,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## SECOND AMENDED COMPLAINT

### INTRODUCTION

Plaintiffs have filed a putative class action challenging certain policies and practices of U.S. Immigration and Customs Enforcement's Chicago Field Office ("ICE" or "ICE Chicago") that they claim violate the Fourth and Fifth Amendments. They amended their complaint on June 20, 2017, and filed their second amended complaint on September 19, 2017, after first intervening on behalf of a second named Plaintiff. The second amended complaint asserts that ICE unlawfully "detain[s] individuals without promptly initiating removal proceedings; obtaining a prompt judicial determination of probable cause; providing an opportunity to be heard before or concurrent with the initiation of detention; or providing a prompt hearing before an immigration judge to understand the charges against them, receive a custody review, and be advised of their due process rights." ECF No. 24 at ¶ 1. Additionally, Plaintiffs complain that

---

[1] Elaine C. Duke became Acting Secretary of Homeland Security on July 31, 2017, automatically substituting for John F. Kelly as a party under Federal Rule of Civil Procedure 25(d).

"ICE Chicago has a policy and practice of arresting individuals without a warrant approved by a judge. . . ." *Id* at ¶ 2.

Because Plaintiffs lack standing to assert the claims contained in the complaint, Federal Rule of Civil Procedure 12(b)(1) mandates dismissal of the amended complaint. Moreover, even if the Court were to find it could exercise subject-matter jurisdiction, the amended complaint fails to state a claim upon which the Court can grant the requested relief, because Defendants afford the putative class all the constitutional rights to which they are entitled. Department of Homeland Security (DHS) policies already require a determination that there is probable cause that an individual is subject to removal prior to detention, and ICE's current practice of attaching administrative warrants with each detainer form ensures that someone other than the arresting officer attests to the probable cause determination. The Constitution requires no further determination.

## OVERVIEW OF ICE DETENTION PRACTICES

A DHS officer or employee authorized under the relevant regulations may, without warrant, arrest aliens under certain prescribed situations. 8 U.S.C. § 1357. Moreover, Congress has mandated that, upon arrest, certain aliens must be detained throughout the pendency of their removal proceedings. 8 U.S.C. § 1226(c). ICE, a component of DHS, may request assistance from state and local law enforcement authorities who have custody of a removable alien. Often, ICE makes such requests using an immigration detainer. An immigration detainer notifies a state or local law enforcement agency (LEA) that ICE intends to take custody of a removable alien in its custody, and asks the state or local entity to (1) notify DHS of the alien's release date; and (2) hold the removable alien for a period of up to 48 hours beyond when the LEA would otherwise release the individual, so that DHS may assume custody of that individual, based on the issuing

2

officer's determination that there is probable cause that the individual is a removable alien. *See* Detainer, DHS Form I-247A.[2]  In those instances where probable cause is required, the form sets for the basis for DHS' determination that it has probable cause to believe that the subject is a removable alien. *Id*.  The form does not require that officers obtain review of the probable cause determination by a federal judge in connection with their issuance. *Id*.  Moreover, neither the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, nor the Constitution requires such review.

On March 24, 2017, to assist with the implementation of the arrest and detention authority established under 8 U.S.C. §§ 1357 and 1226, ICE issued Policy Number 10074.2, entitled "Issuance of Immigration Detainers by ICE Immigration Officers," which sets out current ICE policy and procedures regarding the issuance of immigration detainers to LEAs.[3]  The directive establishes that ICE officers must accompany all detainers issued with probable cause with "either: (1) a properly completed Form I-200 (Warrant for Arrest of Alien) signed by an authorized ICE immigration officer; or (2) a properly completed Form I-205 (Warrant of Removal/Deportation) signed by an authorized ICE immigration officer." *Id*. at ¶ 2.4.

Nothing in the law requires that an arrested individual be brought before an immigration judge for a review of the lawfulness of his or her arrest.

---

[2] Available at https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf, last visited November 20, 2017.

[3] Available at https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf, last visited November 20, 2017

**STANDARDS OF REVIEW**

**I.      Federal Rule of Civil Procedure 12(b)(1).**

A motion to dismiss under Rule 12(b)(1) challenges the existence of the Court's subject-matter jurisdiction, the very "power to decide the claim before it." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017). Challenges to subject-matter jurisdiction can be either "facial" or "factual," and the party asserting jurisdiction bears the burden of establishing that jurisdiction exists. *Farnik v. F.D.I.C.*, 707 F.3d 717, 721 (7th Cir. 2013); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009).

District court subject-matter jurisdiction is limited by Article III to live cases and controversies, U.S. Const. art. III, § 2, and "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Kingdomware Technologies, Inc. v. United States*, ⸺ U.S. ⸺, 136 S. Ct. 1969, 1975 (2016) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 133 S.Ct. 721, 726 (2013)). A plaintiff must establish a case or controversy before a district court to afford the court with subject-matter jurisdiction over the claims. This means the plaintiff has the burden to establish that he or she has standing to bring the claims and that those claims are not moot.

The Supreme Court has clarified the following standard to establish Article III standing:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted). As the Supreme Court expressed, these three elements are the "irreducible constitutional

minimum of standing." *Id*. at 560. Moreover, the Seventh Circuit has held that a plaintiff bears the burden to establish standing as an indispensable element of the case. *Apex Digital*, 572 F.3d at 443. The Supreme Court has further suggested that, where a plaintiff has filed an amended complaint, standing is determined as of the date of the amended complaint – rather than of the date of the original complaint. *See, e.g.*, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991).

Similarly, a case that has become moot no longer presents a live case or controversy. *See Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017). A case becomes moot when the source of the plaintiff's prospective injury has been removed and there is no longer any effective relief that the court can order. *Id.* (collecting cases).

## II.     Federal Rule of Civil Procedure 12(b)(6).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but it is not required to accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Rony Chavez Aguilar was born in Guatemala on September 17, 1984, and entered the United States in 1991 as a Lawful Permanent Resident (LPR). ECF No. 24 at ¶¶ 22-23. In January 2017, ICE issued an immigration detainer to a Kentucky law enforcement agency requesting that the LEA hold Plaintiff Chavez after the expiration of its authority to hold him

under state law, so that ICE Chicago could assume physical custody. *Id*. at ¶ 28. ICE Chicago assumed physical custody of Plaintiff Chavez on or around March 9, 2017. *Id*. at ¶ 29.

Plaintiff Aguilar was the sole named plaintiff on a class action he filed on behalf of a putative class on March 27, 2017. ECF No. 1. On May 30, 2017, Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction. ECF No. 11. In response, Plaintiff Aguilar – again as the sole named member of a putative class – filed an amended complaint on June 20, 2017. ECF No. 17.

Plaintiff Irwin Rolle was born in Jamaica on October 1, 1970, and entered the United States on March 23, 1988 as an LPR. ECF No. 24 at ¶¶ 35-36. ICE Chicago assumed physical custody of Plaintiff Rolle on or around June 28, 2017. *Id*. at ¶ 39. Plaintiff Rolle moved to intervene on August 21, 2017. ECF No. 20. On August 25, 2017, the parties stipulated to the intervention and to the filing of a second amended complaint that would include Mr. Rolle as a named plaintiff. ECF No. 22.

ICE released Plaintiff Aguilar from custody on June 8, 2017 – twelve days before Plaintiffs filed their first amended complaint and more than three months before they filed their second amended complaint. *See* Ex. A. ICE released Plaintiff Rolle from custody on September 9, 2017 – ten days before Plaintiffs filed their second amended complaint. *See* Ex. B.

## ARGUMENT

### I. The Court must dismiss the second amended complaint because Plaintiffs lacks Article III standing to assert the claims and because their claims are moot.

For a number of reasons, including their release from custody and their failure to assert a concrete and particularized injury in fact that is not merely speculative, Plaintiffs lacks the standing necessary to afford this Court the subject-matter jurisdiction over the second amended complaint. Federal jurisdiction "ordinarily depends on the facts as they exist when the complaint

6

is filed," *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989), or where an amended complaint is filed, *Wellness Community-National v. Wellness House*, 70 F.3d 46, 49, 50 (7th Cir. 1995); *see also Cnty. of Riverside*, 500 U.S. at 51. As noted, *supra,* ICE released Plaintiff Aguilar from custody on June 8, 2017 – twelve days before Plaintiffs filed their first amended complaint and more than three months before they filed their second amended complaint. *See* Ex. A. ICE released Plaintiff Rolle from custody on September 9, 2017 – ten days before Plaintiffs filed their second amended complaint. *See* Ex. B.

Named Plaintiffs' release from custody renders them without an "actual or imminent" injury that the Court could redress in their favor. *Lujan*, 504 U.S. at 560-61. Specifically, the relief named Plaintiffs request would not redress the past harm that they allege, and they likewise fail to allege any imminent future harm as a basis for standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). To clarify, neither named Plaintiff is currently in detention, much less in detention based on an arrest made without "a sworn, particularized statement of probable cause." *See* ECF No. 17 at ¶ 31. Moreover, they no longer face the situation where ICE might hold them without bringing them "promptly . . . before a detached and neutral judicial officer for a probable cause hearing" or "before a judge to understand the charges against him." *Id.* Accordingly, named Plaintiffs lack standing to raise the claims the second amended complaint asserts. *See Wellness Community–National*, 70 F.3d at 50. Alternatively, even if named Plaintiffs had standing to assert their claims when they filed the second amended complaint, the subsequent release renders their claims moot. *See, e.g.*, *Ozinga*, 855 F.3d at 734. Under either analysis, the Court lacks subject-matter jurisdiction over the claims and should, therefore, dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(1).

Moreover, each named Plaintiff claims United States citizenship. *See* ECF No. 24 at ¶¶ 21, 34. If those statements are correct, then it is unlikely that either named Plaintiff would face immigration detention or arrest in the future.

## II.    The INA mandates that the Court dismiss this action for lack of subject-matter jurisdiction.

Plaintiffs' challenge to ICE's detention practices necessarily asks this Court to opine on ICE's practices relating to the removal of aliens. Specifically, Plaintiffs assert that when ICE detains individuals prior to the initiation of removal proceedings – which is but one step of many in the removal process – it violates the Constitution (both by failing to obtain a determination of probable cause from a neutral and detached magistrate and by failing to timely file a notice to appear with the immigration court, present the individual before an immigration judge, or initiate another form of removal proceedings). *See* ECF No. 24 at ¶ 2.

Congress, however, has expressed its clear intent to foreclose district court adjudication of claims that individuals could raise in removal proceedings through the jurisdiction channeling provisions of the INA, 8 U.S.C. § 1252(a)(5), (b)(9), and (g). Specifically, Congress has stripped federal district courts of jurisdiction to hear Plaintiffs' claims. In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Congress amended the INA to circumscribe the availability of judicial review. Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Subsequently, in the REAL ID Act of 2005, Congress unequivocally clarified the sweeping nature of its decision to preclude district court jurisdiction over claims seeking to challenge certain Executive Branch decisions in the immigration context. Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005).

Under the REAL ID Act, "[j]udicial review of *all questions of law and fact*, including interpretation and application of constitutional and statutory provisions, *arising from any action*

*taken or proceeding brought* to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order," which may occur exclusively in the courts of appeals. 8 U.S.C. § 1252(a)(5) (emphasis added). Moreover, Congress expressly precluded district court review of "questions of law or fact" arising from any action taken or proceeding brought to remove an alien from the United States. *Id.* § 1252(b)(9); *see also Reno v. Am.-Arab Anti-Discrimination Com.*, 525 U.S. 471, 483-85 (1999) (Section 1252(b)(9) is "the unmistakable 'zipper' clause," channeling "judicial review of all . . . decision and *actions leading up to or consequent upon final orders of deportation*," including "*non-final order[s]*," into one proceeding exclusively before a court of appeals) (emphasis added); *Aguilar v. U.S. ICE*, 510 F.3d 1, 9, 11 (1st Cir. 2007) ("[S]ection 1252(b)(9) is not limited to singular orders of removal," but "consolidate[s] 'all questions of law and act' that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal an alien," and "channels federal court jurisdiction over 'such questions[]' to the courts of appeals" following "exhaustion of administrative procedures and the consolidation of claims for judicial review.").

Plaintiffs cannot plausibly argue that their challenge does not "arise from [] action[s] taken or proceeding brought to remove [them] from the United States." 8 U.S.C. § 1252(b)(9); *see id.* § 1252(a)(5). Regardless of whether Plaintiffs *must* challenge their detention in bond redetermination or removal proceedings, they certainly *can* do so.[4] *See, e.g.*, 8 C.F.R.

---

[4] The Ninth Circuit has recently clarified, further, that the petition for review process Congress established in 8 U.S.C. § 1252 is the *exclusive* means by which aliens may bring such challenges. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) ("The section titled 'Exclusive means of review,' 8 U.S.C. § 1252(a)(5), prescribes the vehicle for judicial review: '[A] petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal . . . .' Lest there be any question about the scope of judicial review, § 1252(b)(9) mandates that '[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final

9

§§ 236.1(c)(8), 236.1(d)(1), 287.3(d); *see also In Re Joseph*, 22 I. & N. Dec. 799 (BIA 1999).

Additionally, where ICE has not yet filed an NTA with the immigration court, an alien's proper

recourse to challenge detention would be a petition for a writ of habeas corpus. 28 U.S.C.

§ 2241.

When Congress amended section 1252(b)(9) to eliminate "claim-splitting – pursuing

selected arguments in the district court and leaving others for adjudication in the immigration

court," it sought to eliminate the "obvious loss of efficiency and bifurcation of review

mechanisms." *Aguilar*, 510 F.3d at 14 (claim-splitting and inefficiency were "among the

principal evils that Congress sought to avoid through . . . section 1252(b)(9)") (citing H.R. Rep.

No. 109-72, at 174, reprinted in 2005 U.S.C.C.A.N. at 299). Thus, Congress sought to ensure

that all claims arising out of an individual's removal proceeding were heard through one

mechanism – the petition for review process.

As the Ninth Circuit recently discerned, if a claim on behalf of any alien, "however it is

framed, challenges the procedure and substance of an agency determination that is 'inextricably

linked' to the order of removal," then that claim "is prohibited by section 1252(a)(5)." *J.E.F.M.*,

837 F.3d at 1032 (internal citation omitted). Plaintiffs' challenge to ICE's detention and

presentment practices and, *especially*, their claims regarding the timeliness of ICE's filing of

NTAs with immigration courts (*see, e.g.* ECF No. 24 at ¶ 19) all challenge part of the "procedure

and substance of an agency determination" relating to the removal process – they necessarily

therefore fall under the auspices of 8 U.S.C. § 1252.

Critically, "section 1252(b)(9) is a judicial channeling provision, not a claim-barring

one." *Aguilar*, 510 F.3d at 18. Congress was clear that "[n]othing . . . in any other provision of

order . . . .'").

this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate *court of appeals* in accordance with this section."  8 U.S.C. § 1252(a)(2)(D) (emphasis added).  Because each Plaintiff may raise his or her claims before an immigration judge, again to the Board of Immigration Appeals, and then, ultimately, may seek review of all constitutional and statutory claims – the very basis of the second amended complaint – before the Seventh Circuit Court of Appeals, this Court lacks subject-matter jurisdiction over those claims.[5]

Congress further deprived this Court of jurisdiction over Plaintiffs' claims through 8 U.S.C. § 1252(g), which strips district courts of jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Government] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).  As the Supreme Court has held, the statute should be narrowly applied "only to [the] three discrete actions" listed.  *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482–83.  Nonetheless, even under this narrow application, the Seventh Circuit has found that section 1252(g) bars district courts from reviewing every aspect of the Government's decisions within those three action areas.  *See, e.g.*, *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002).  The Seventh Circuit noted that section 1252(g) "does not differentiate among kinds of relief.  It . . . interdicts all judicial review 'arising from' those actions, unless some other part of § 1252 allows review."  *Id.*; *see also Botezatu v. INS*, 195 F.3d 311, 313-14 (7th Cir. 1999); *cf.*

---

[5] The Ninth Circuit suggested that the result of denying individuals access to district courts could seem "draconian," but that suggestion did not sway the Court from finding that aliens in Plaintiffs' situation can still "receive their 'day in court'."  *J.E.F.M.*, 837 F.3d at 1031 ("First, while these sections limit *how* immigrants can challenge their removal proceedings, they are not jurisdiction-stripping statutes that, by their terms, foreclose *all* judicial review of agency actions. Instead, the provisions channel judicial review over final orders of removal to the courts of appeals.") (emphasis in the original).

*Silva v. United States*, 866 F.3d 938, 940-41 (8th Cir. 2017) (observing that section 1252(g) "makes no distinction between discretionary and nondiscretionary decisions" and that "[s]o long as the claim arises from a decision to" commence removal proceedings, adjudicate an immigration case, or execute a removal order "there is no jurisdiction"). This action, as noted *supra*, necessarily challenges ICE's determination of whether, when, how, or even if to commence removal proceedings, each of which Congress has excluded from review under section 1252(g). *See Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 598-99 (9th Cir. 2002).

Accordingly, 8 U.S.C. § 1252 forecloses subject-matter jurisdiction over Plaintiffs' claims in this Court. Because Plaintiffs have failed to allege a basis of subject-matter jurisdiction, this Court must dismiss the second amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1). *Apex Digital, Inc.*, 572 F.3d at 443.

**III. This Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a cognizable claim for relief under either the INA or the Constitution.**

Assuming, arguendo, that this Court has subject-matter jurisdiction over the claims, neither the INA nor the Constitution affords aliens the protections that Plaintiffs asserts here.

**A. The INA does not require Defendants to alter their practices.**

Plaintiffs assert that Defendants' arrest and detention policies and practices violate the statutory limitations of 8 U.S.C. § 1357(a)(2), because Defendants fail to promptly present aliens before immigration judges after warrantless arrests. ECF No. 17 at ¶¶ 17, 43. Section 1357(a)(2), however, requires the taking of the alien "without unnecessary delay" before *a DHS officer* ("officer of the Service"), *see* 6 U.S.C. § 557, not an immigration judge. DHS regulations provide for a prompt examination "by an officer othan than the arresting officer." 8 C.F.R. § 287.3(a). Congress, moreover, has expressly prohibited Defendants from bringing aliens

before immigration judges sooner than ten days after serving them with notices to appear unless the individual requests an earlier hearing in writing. 8 U.S.C. § 1229(b)(1) ("In order that an alien be permitted the opportunity to secure counsel before the first hearing date in proceedings under section 1229a of this title, the hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear, unless the alien requests in writing an earlier hearing date."); *Hernandez v. I.N.S.*, No. 09-3271-RDR, 2010 WL 126179, at *1 (D. Kan. Jan. 11, 2010) ("This specific provision provides for the scheduling of removal proceedings so as to allow the alien to obtain counsel, and is a part of the subchapter on removal proceedings to be conducted by an immigration judge for deciding deportability of an alien.").

Moreover, nothing in the INA requires that Defendants obtain a judicial determination of probable cause of removability. To the contrary, as a court in the Central District of California recently held when faced with this precise issue, in civil immigration proceedings, "the Legislature and the executive grant the INS (and now ICE) the authority pursuant to the INA to effect immigration arrests and detainments." *Gonzalez v. ICE*, 2017 WL 2559616, at *7 (C.D. Cal. June 12, 2017). Expounding on that issue, the *Gonzalez* court added, "Further, in [*United States v. Tejada*, 255 F.3d 1 (1st Cir. 2001)], the court specifically noted that during immigration civil proceedings pursuant to 8 U.S.C. § 1357(a)(2), an examination before an immigration officer rather than a probable cause review before a magistrate [] suffices." *Gonzalez*, 2017 WL 2559616, at *7.

Because Congress has delegated to DHS the authority to make probable cause determinations, as well as to issue arrest warrants, therefore, this Court cannot grant Plaintiff relief on his claim that the INA requires a judicial determination of probable cause to arrest. The

Court should instead dismiss Plaintiffs' First Claim for Relief under Federal Rule of Civil

Procedure 12(b)(6).

> **B.    The Fourth Amendment does not require Defendants to obtain judicial review or determination of probable cause.**

Plaintiffs claim that the "Defendants' policies and practice of arrest and continued

detention of Plaintiffs without a judicial warrant or obtaining a prompt post-arrest determination

of probable cause from an immigration judge or other detached and neutral judicial officer

unreasonably deprive Plaintiffs of their liberty in violation of the Fourth Amendment."  ECF No.

17 at ¶ 48.  This claim must necessarily fail, because it requires this Court to import criminal

procedural requirements into the civil administrative processes of deporting removable aliens.

Congress has not mandated judicial review of probable cause of an alien's arrest to sustain

the alien's detention pending removal proceedings.  *See, e.g.*, 8 U.S.C. §§ 1357(a)(2), and

1226(a).  Further, the Fourth Amendment has long permitted civil immigration detention

notwithstanding the fact that the probable cause determinations are made by administrative

officers rather than a neutral magistrate.  *See Abel v. United States*, 362 U.S. 217, 232-37 (1960)

(discussing long-standing administrative arrest procedures in deportation cases).

In the criminal context, the Fourth Amendment requires a neutral and detached magistrate

to determine whether probable cause exists for an arrest.  This must either occur before the arrest

(via a warrant), or promptly after a warrantless arrest, which generally means 48 hours.  *See*

*Gerstein v. Pugh*, 420 U.S. 103, 125 (1975); *Cnty. of Riverside*, 500 U.S. at 57-59.  Plaintiffs cite

to no authority for their claim that the Fourth Amendment's probable cause hearing requirement

applies in civil removal proceedings, and courts have consistently found, especially in the

immigration context, to the contrary.  *See, e.g.*, *Gonzalez*, 2017 WL 2559616, at *10 (rejecting

the argument Plaintiffs raise here and finding that "that it is not unconstitutional under the Fourth

Amendment for the Legislature to delegate a probable cause determination to an executive

officer, such as an ICE agent, rather than to an immigration, magistrate, or federal district court

judge. No court has held to the contrary . . . .").

Plaintiffs' claims ignore the distinction between criminal detention – which is not at issue

here – and civil immigration detention. The analysis has *always* been different in the

immigration context. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("Consistent with

the civil nature of the proceeding, various protections that apply in the context of a criminal trial

do not apply in a deportation hearing. . . . In short, a deportation hearing is intended to provide a

streamlined determination of eligibility to remain in this country, nothing more."); *Chavez-Raya

v. INS*, 519 F.2d 397, 400-01 (7th Cir. 1975). Thus, there is no role for a neutral magistrate in

the context of immigration arrests. For example, immigration warrants are issued by a DHS

officer, not an immigration judge. 8 U.S.C. § 1226(a); *see also* 8 C.F.R. § 287.5(e)(2) (listing

officers authorized to issue a warrant). Similarly, immigration officers are authorized to make a

determination of probable cause within 48 hours of a warrantless arrest. *See* 8 C.F.R. § 287.3(d).

Statutes providing for deportation have historically authorized the arrest and detention of

deportable aliens on the determination of an executive official.[6] As the Supreme Court has

---

[6] *See, e.g.*, Act of June 25, 1798, ch. 58, § 1, 1 Stat. 571 (signed by President John Adams) (authorizing the President to expel "all such aliens as he shall judge dangerous to the peace and safety of the United States"); Act of Oct. 19, 1888, ch. 1210, 25 Stat. 566 (authorizing the Secretary of the Treasury to arrest and deport certain aliens unlawfully within the United States); Act of Mar. 3, 1903, ch. 1012, § 21, 32 Stat. 1218 (authorizing the Secretary of the Treasury to arrest and deport certain aliens found to be unlawfully within the United States); Act of Feb. 20, 1907, ch. 1134, § 20, 34 Stat. 904 (authorizing the Secretary of Commerce and Labor to arrest and deport certain aliens found to be unlawfully within the United States); Act of Feb. 5, 1917, ch. 29, § 19, 39 Stat. 889 (authorizing the Secretary of Labor to arrest and deport certain aliens unlawfully in the United States); Act of Oct. 16, 1918, ch. 186, § 2, 40 Stat. 1012 (authorizing the Secretary of Labor to arrest and deport aliens within the United States unlawfully); Act of May 10, 1920, ch. 174, 41 Stat. 593 (authorizing the Secretary of Labor to arrest and deport certain aliens unlawfully in the United States); Internal Security Act of 1950, ch. 1024, Title I,

expressed, there is "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens[.]"  *Abel*, 362 U.S. at 233; *see also Tejeda-Mata*, 626 F.2d at 725 (citing 8 U.S.C. § 1357(a)(2)).

The critical question, therefore, is whether the Fourth Amendment requires judicial review of probable cause for detention in civil immigration proceedings.  In *Abel*, the Court addressed this same type of argument – albeit not necessarily on the merits – by the defendant who was detained for several weeks at a detention center in Texas until he was arrested on criminal charges.  362 U.S. at 225.  Addressing the argument that the defendant's arrest, incidental search, and weeks-long immigration detention was invalid because it was never sanctioned by a neutral magistrate, Justice Frankfurter's opinion for the Court devoted five pages to rejecting this claim.  *Id.* at 230-34 (rejecting Defendant's claim after addressing the "constitutional validity of [the] long-standing administrative arrest procedure in deportation cases").

In the second amended complaint, Plaintiffs assert that they are entitled to protections under *Gerstein* and *Cnty. of Riverside*.  ECF No. 24 at ¶ 19.  These cases, however, involve criminal, rather than civil immigration, arrests, and they are, therefore, not applicable here.  *See, e.g.*, *Rhoden v. United States*, 55 F.3d 428, 432 n.7 (9th Cir. 1995) (per curiam) (distinguishing the Fourth Amendment analysis for detention "[i]n the context of a criminal arrest" from the analysis involved for civil immigration detentions) (citing *Cnty. of Riverside*, 500 U.S. at 56-58).  Even the *Gerstein* decision clarifies that its requirement for a neutral and detached magistrate is not easily transferable to civil proceedings.  *See* 420 U.S. at 125 n.27.  Moreover, in *Gerstein*, the Supreme Court explicitly limited its analysis to the criminal context. The Court explained that

§ 22, 64 Stat. 1008 (authorizing the Attorney General to arrest and deport certain aliens illegally in the United States).

"the Fourth Amendment was tailored explicitly for the criminal justice system," and that "the Fourth Amendment probable cause determination is in fact only the first stage of an elaborate system, unique in jurisprudence, *designed to safeguard the rights of those accused of criminal conduct*." *Id.* (emphasis added). The Court noted that "civil procedures . . . are inapposite and irrelevant in the wholly different context of the criminal justice system." *Id.*

The concerns underlying the Supreme Court's decision in *Gerstein* – safeguarding the rights of those accused of criminal conduct – are not applicable to civil removal proceedings, because a removal hearing "is in no proper sense a trial and sentence for a crime or offence . . . It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority . . . has determined his continuing to reside here shall depend." *Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893). For example, DHS does not have to prove removability beyond a reasonable doubt, *see Woodby v. INS*, 385 U.S. 276, 286 (1966) ("[n]o deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true"); *Cortez-Acosta v INS*, 234 F.3d 476, 480 (9th Cir. 2000), there is no Sixth Amendment right to counsel in civil removal proceedings, *see Morales-Izquierdo v. Gonzalez*, 486 F.3d 484, 497 (9th Cir. 2007) (en banc), and the Speedy Trial Act does not apply, *see United States v. Cepeda-Luna*, 989 F.2d 353, 355-56 (9th Cir. 1993) (holding that because deportation proceedings are civil rather than criminal proceedings, the thirty-day indictment requirement of the Speedy Trial Act does not apply).

In short, courts have "frequently . . . upheld administrative deportation proceedings shown . . . to have been begun by arrests pursuant to" an administrative process. *Abel*, 362 U.S. at 233-34. This "impressive historical evidence of acceptance of the validity of statutes providing for

administrative deportation arrest from almost the beginning of the Nation" counters arguments, such as those of Plaintiffs here, that the Fourth Amendment requires the application of protections afforded in criminal proceedings to individuals in the administrative immigration context. *Id.* at 234; *see also id.* at 230 ("Statutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time. It would emphasize the disregard for the presumptive respect the Court owes to the validity of Acts of Congress, especially when confirmed by uncontested historical legitimacy, to bring into question for the first time such a long-sanctioned practice of government").

Under Plaintiffs' aspirational framework, ICE must obtain a determination of probable cause of removability from an immigration judge before an individual can be detained beyond 48 hours. But Plaintiffs' argument for a judicial determination of probable cause seeks to read a 48-hour requirement into 8 U.S.C. § 1357(a)(2). Section 1357(a)(2) requires only that the alien be taken promptly before another immigration officer, rather than an immigration judge or magistrate, after a warrantless arrest. *See, e.g.*, *United States v. Sotoj-Lopez*, 603 F.2d 789, 790 (9th Cir. 1979) (holding that, in the context of arrests for civil removal proceedings, § 1357(a)(2) relaxes the constitutional requirement codified in Fed. R. Crim. P. 5(a) that a "person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge"); *United States v. Encarnacion*, 239 F.3d 395, 400 (1st Cir. 2001) (explaining that because defendant's warrantless arrest was civil, rather than criminal, the court had "little trouble" holding that his subsequent eight-day detention prior to being allowed to appear before a federal magistrate was not unlawful under 8 U.S.C. § 1357(a)(2)); *Tejada*, 255 F.3d at 3-4 (holding that alien arrested and detained pursuant to § 1357(a)(2) is subject to civil detention, which "does not trigger the protections of [Federal rule of Criminal Procedure] 5(a)," and,

18

accordingly, "[t]he requirement that a magistrate evaluate his detention within 48 hours of his arrest is therefore inapplicable").

Congress is fully aware of the U.S. Constitution, *Gerstein*, and, in general, the concepts of "probable cause" and "prompt presentment." *See generally Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 554 (1995) ("Congress is presumed to know the law"). Plaintiff must concede that Congress directed that, following a warrantless arrest for an immigration violation, "the alien arrested shall be taken without unnecessary delay for examination before *an officer of the Service* having authority to examine aliens as to their right to enter or remain in the United States," rather than an immigration judge or a magistrate. 8 U.S.C. § 1357(a)(2) (emphasis added); *see also* 6 U.S.C. § 557 (references to the former INS "shall be deemed to refer to" the appropriate DHS official or component); 8 C.F.R. § 287.3. As noted, *supra*, courts – including the Supreme Court – have already affirmed the validity of the process envisioned by this statute. *See Reno v. Flores*, 507 U.S. 292, 307 (1993) (noting, without setting a time frame, that "due process is satisfied by giving the detained alien juveniles the *right* to a hearing before an immigration judge") (emphasis in original); *see also Tejada*, 255 F.3d at 3-4 (civil detention following 8 U.S.C. § 1357(a)(2) arrest does not implicate requirement that a magistrate evaluate detention within 48 hours of arrest); *Buquer v. City of Indianapolis*, No. 1:11-cv-00708-SEB, 2013 WL 1332158 (S.D. Ind. Mar. 28, 2013), at *8.

Accordingly, given the "impressive historical evidence" of the constitutional validity of immigration detention without a judicial determination of probable cause, the Court should dismiss Plaintiffs' Second Claim for Relief under Federal Rule of Civil Procedure 12(b)(6). *Abel*, 362 U.S. at 232, 234 (suggesting, in dicta, that the procedures, substantially similar to those

in place today, that govern the initial arrest of aliens and their subsequent detention are a constitutionally valid aspect of civil removal proceedings).

**C.**     **The Fifth Amendment does not require defendants to present individuals for an initial hearing or for judicial review of probable cause for detention within 48 hours.**

**1.**     **Defendants do not violate Plaintiffs' procedural due process rights.**

Defendants do not deny that aliens are entitled to procedural due process of law in removal proceedings. *See, e.g.*, *Flores*, 507 U.S. at 306. Those rights are subject to limits, however, and the Supreme Court has recognized the distinctions between the rights of aliens and citizens. *Mathews v. Diaz*, 426 U.S. 67, 78 (1976) ("The fact that all persons, aliens and citizens alike are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogeneous legal classification."). Indeed, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 79-80.

Aliens have no statutory rights to judicial review of a probable cause determination or to an initial master calendar hearing sooner than ten days after receiving an NTA. *See* 8 U.S.C. § 1229(b)(1). Accordingly, Plaintiffs asks this Court to find that Defendants' policies and practices violate their Fifth Amendment rights. The requirement of due process, however, "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To state a procedural due process claim, further, a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation. *See Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Here, Plaintiffs cannot demonstrate that they possess any protected interest in

20

procedures beyond those that have been afforded them. First, as noted *supra,* Congress has established that immigration officers can determine probable cause without requiring the intervention of a neutral third party. *See* 8 U.S.C. § 1357; *Gonzalez*, 2017 WL 2559616, at \*7 (citing *Tejada*, 255 F.3d at 1). Second, Congress expressly created a ten-day minimum waiting period between an alien's receipt of an NTA and the initial appearance before an immigration judge, and no court has seen fit to invalidate that statutory mandate. *See* 8 U.S.C. § 1229(b)(1).

In *Mathews v. Eldridge*, the Supreme Court identified three factors to be considered in determining whether additional due process is required in a particular situation: "(1) the nature of the private interest that will be affected; (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. 319, 335 (1976).

Contrary to the second amended complaint's blanket assertions, Plaintiffs have not pointed to any evidence that a requirement of a more prompt presentment to an immigration judge would meaningfully reduce the risk of "a significant deprivation of [aliens'] liberty." *See* ECF No. 24 at ¶ 59. This is especially true in light of Congress's mandate that the ten-day period is to be afforded "[i]n order that an alien be permitted the opportunity to secure counsel." 8 U.S.C. § 1229(b)(1). Indeed, a requirement for a more prompt presentment could have the opposite effect, as aliens may not have adequate time to obtain an attorney or collect documentation and evidence to support a request for release on bond. Because, for instance, EOIR regulations reasonably require that an alien who has received a bond hearing must prove a change in circumstances in order to receive a subsequent bond hearing, an early presentment could prove especially detrimental to the alien. *See* 8 C.F.R. § 1003.19(e) ("After an initial bond

21

redetermination, an alien's request for a subsequent bond determination . . . shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination.").

Under the second *Mathews* factor, courts consider "the fairness and reliability of the existing . . . procedures, and the probative value, if any, of additional procedural safeguards." 424 U.S. at 343.  Aliens already receive a number of procedural safeguards to ensure fundamental fairness during their removal process.  As discussed above, when DHS detains an alien pursuant to 8 U.S.C. § 1357(a)(2) on the belief that they are present in the United States in violation of law, DHS is required to make a custody and bond determination in the first instance within 48 hours (absent extraordinary circumstances).  *See* 8 C.F.R. § 287.3(b).  Except for aliens subject to expedited removal provisions of 8 U.S.C. § 1225(b)(1)(A), the examining officer will advise the alien "of the reasons for his or her arrest and the right to be represented at no expense to the Government," provide the alien "a list of the available free legal services provided by organizations and attorneys . . . located in the district where the hearing will be held," and "advise the alien that any statement made may be used against him or her in a subsequent hearing."  8 C.F.R. § 287.3(c).  Additionally, an alien detained under 8 U.S.C. § 1226(a) who is denied bond by the examining officer may request a custody redetermination hearing conducted by an immigration judge at any time before the issuance of a final order of removal.  8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1).  Plaintiffs have failed to provide any evidence that aliens are being wrongfully detained because of a lack of additional process.

Finally, the Government's interest in maintaining the current scheme vastly outweighs any interest Plaintiffs assert.  Mandating a requirement of a more prompt presentment before an

immigration judge would have a ripple effect throughout the removal process, from the initial apprehension of the alien (whether at the border or in the United States), to the actual hearing before an immigration judge. The additional burden of providing a judicial review or determination of probable cause would needlessly take time away from immigration judges' ability to provide prompt hearings (including subsequent master calendar, merits, and bond redetermination hearings) for other detained aliens. Moreover, such a mandate would inevitably increase the current backlogs in the immigration courts – as well as adding considerable financial and other costs – because it would require immigration judges to push merits hearings further back on their already overburdened calendars to make time for the new hearings that Plaintiffs seek here. This could cause longer detention periods for aliens not members of this class, which would place them in a patently unfair situation. Ultimately, Plaintiffs fail to show that, under *Mathews*, the current scheme violates procedural due process.

### 2. Defendants do not violate Plaintiffs' substantive due process rights.

As noted, *supra*, Plaintiffs attempt to impute to individuals in immigration proceedings the substantive due process protections afforded to criminal defendants. ECF No. 24 at ¶ 19. Plaintiffs cannot plausibly argue that removal proceedings are not civil proceedings and that, consequently, aliens in removal proceeings are afforded the full trappings of legal protections that are accorded to criminal defendants. *See, e.g.*, *Woodby*, 385 U.S. at 286 (no requirement that DHS prove removability beyond a reasonable doubt); *Cortez-Acosta*, 234 F.3d at 480 (no Sixth Amendment right to counsel in a civil removal proceeding); *Cepeda-Luna*, 989 F.2d at 355-56 (holding Speedy Trial Act does not apply in removal proceedings). An alien's right to certain advisals and information provided at an initial master calendar hearing are statutory and regulatory rights, not constitutional rights. *See, e.g.*, *Coleman v. Frantz*, 754 F.2d 719, 724 (7th

Cir. 1985) (citing the Sixth Amendment, the Fifth Amendment right against self-incrimination, and the Eighth Amendment right to seek bail). Moreover, and as discussed above, *supra* at Section II, to the extent that Plaintiffs claim they were deprived of any of the statutory or regulatory rights that are provided in an initial master calendar hearing such that it affected the fairness of their removal proceedings, such a claim "arises from" immigration removal proceedings and can only be brought through a petition for review in the federal courts of appeals. 8 U.S.C. § 1252(a)(5), (b)(9); *J.E.F.M.*, 837 F.3d at 1029.

Additionally, no federal court has ever extended the due process right to prompt presentment in criminal proceedings to the civil immigration context. Yet that is exactly what Plaintiff seeks in this case. *See generally* ECF No. 24. "The mere novelty of [Plaintiffs'] claim is reason enough to doubt that substantive due process sustains it." *Flores*, 507 U.S. at 303; *see also Rochin v. California*, 342 U.S. 165, 172 (1952) (noting that substantive due process precludes the Government from engaging in conduct that "shocks the conscience," or interferes with rights implicit in the concept of ordered liberty).

The Supreme Court has rejected the argument that immigration detention necessarily violates an alien's substantive due process rights because there is no set time period within which the Government must present the alien for a hearing before an immigration judge. *Flores*, 507 U.S. at 309. In fact, the Supreme Court found that aliens were not entitled to "automatic review by an immigration judge of the initial deportability and custody determinations" made by immigration officers, specifically reversing the Ninth Circuit's en banc ruling that applied to civil immigration detention. *Id*.

Creating a new constitutional right that would guarantee all aliens a hearing before an immigration judge within 48 hours of detention for civil removal proceedings would ignore

24

decades of Supreme Court precedent that has repeatedly held that the purpose of immigration detention is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws. *Lopez-Mendoza*, 468 U.S. at 1039. Accordingly, the Court should dismiss Plaintiffs' third claim for relief under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

This Court must dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(1) because it lacks subject-matter jurisdiction over Plaintiffs' claims. In the alternative, if the Court finds that it has subject-matter jurisdiction, it should nonetheless dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) because the second amended complaint fails to assert a claim upon which the Court may grant the relief Plaintiffs request.


DATED:       November 20, 2017       Respectfully submitted

                                       CHAD A. READLER
                                       Principal Deputy Assistant Attorney

 General

                                       WILLIAM C. PEACHEY
                                       Director

                                       COLIN A. KISOR
                                       Deputy Director

                                       SARAH L. VUONG
                                       Senior Litigation Counsel

(additional counsel for Defendants continued on next page)

*/s/ J. Max Weintraub*
J. MAX WEINTRAUB
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Ben Franklin Station
Washington, DC  20044
(202) 305-7000; (202) 305-7551 (facsimile)
jacob.weintraub@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 20, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

*/s/ J. Max Weintraub*
J. MAX WEINTRAUB
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section

*Attorney for Defendants*