**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Rony Chavez AGUILAR, *et al.*, | ) | |
| | ) | Case No. 17-cv-2296 |
| Plaintiffs, | ) | |
| vs. | ) | Hon. Robert M. Dow, Jr. |
| | ) | |
| U.S. IMMIGRATION AND CUSTOMS FIELD | ) | |
| ENFORCEMENT CHICAGO FIELD OFFICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 3

LEGAL STANDARD................................................................................................... 5

ARGUMENT .............................................................................................................. 6

I.     The release of the named Plaintiffs after they joined this case did not deprive them of standing or moot the class claims, which are inherently transitory............................... 6

II.    The INA's channeling and jurisdiction-stripping provisions do not preclude this Court from exercising jurisdiction over these claims, which challenge the circumstances of *detention*, rather than removal or removal proceedings......................... 9

III.   The Second Amended Complaint states three independent claims for relief. .................. 15

      A.    Plaintiffs have stated a claim based on the INA because the statutory grant of warrantless arrest authority requires bringing the individual before an immigration judge "without unnecessary delay."................................................. 15

      B.    Plaintiffs have stated a claim under the Fourth Amendment because Defendants' detention practices do not grant a prompt hearing before an immigration judge. ............................................................................... 19

      C.    Plaintiffs have stated a claim under the Fifth Amendment, because Defendants' detention practices deprive individuals of their liberty without any meaningful opportunity to be heard. ...................................................... 25

            **1.**    Plaintiffs have adequately alleged that ICE's practices deprive them of procedural due process**.** ............................................. 25

            **2.**    Plaintiffs have adequately alleged a claim based on substantive due process**.**................................................................................. 28

CONCLUSION............................................................................................................ 30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. United States*,
362 U.S. 217 (1960) .................................................................................................22, 23

*Addington v. Texas*,
441 U.S. 418 (1979) .........................................................................................................25

*Aguilar v. ICE*,
510 F. 3d 1 (1st Cir. 2007) .......................................................................................11, 12

*Arias v. Rogers*,
676 F.2d 1139 (7th Cir. 1982) ...........................................................................16, 17, 18, 21

*Armstrong v. Manzo*,
380 U.S. 545 (1965) .........................................................................................................29

*Armstrong v. Squardrito*,
152 F.3d 564 (7th Cir. 1998) ....................................................................................28, 29

*as-Castrillon v. Dep't of Homeland Sec.*,
535 F.3d 942 (9th Cir. 2008) .........................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................6

*Botezatu v. INS*,
195 F.3d 311 (7th Cir. 1999) .........................................................................................14

*Buquer v. City of Indianapolis*,
2013 WL 1332158 (S.D. Ind. 2013) .............................................................................21

*Buquer v. City of Indianapolis*,
797 F. Supp. 2d 905 (S.D. Ind. 2011) ...........................................................................21

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) .........................................................................................................27

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998) .........................................................................................................28

*Coleman v. Frantz*,
    754 F.2d 719 (7th Cir. 1985) ...............................................................29

*Corley v. United States*,
    556 U.S. 303 (2009)...........................................................................26

*County of Riverside v. McLaughlin*,
    500 U.S. 44 (1991).........................................................................9, 19

*Demore v. Kim*,
    538 U.S. 510 (2003)...........................................................................11

*Evers v. Astrue*,
    536 F.3d 651 (7th Cir. 2008) .............................................................5, 6

*Flores-Torres v. Mukasey*,
    548 F.3d 708 (9th Cir. 2008) ...............................................................10

*Fornalik v. Perryman*,
    223 F.3d 523 (7th Cir. 2000) ...............................................................14

*Fuentes v. Shevin*,
    407 U.S. 67 (1972)............................................................................27

*Gates v. City of Chicago*,
    623 F.3d 389 (7th Cir. 2010) ...............................................................27

*Gerstein v. Pugh*,
    420 U.S. 103 (1975).................................................................... *passim*

*Gomez-Chavez v. Perryman*,
    308 F.3d 796 (7th Cir. 2002) ..........................................................14, 15

*Gonzalez v. ICE*,
    2014 WL 12605369 (C.D. Cal. Oct. 24, 2014).........................................9

*Gonzalez v. ICE*,
    2017 WL 2559616 (C.D. Cal., June 12, 2017) ........................................24

*Hayes v. Faulkner Cty., Ark.*,
    388 F.3d 669 (8th Cir. 2004) ...............................................................29

*Hernandez v. INS*,
    2010 WL 126179 (D. Kan., Jan. 11, 2010)..............................................18

*INS v. Lopez-Mendoza*,
    468 U.S. 1032 (1984).............................................................21, 22, 30

*INS v. St. Cyr,*
    533 U.S. 289 (2001) ................................................................................................11

*J.E.F.M. v. Lynch*
    837 F.3d 1026 (9th Cir. 2016) ........................................................................11, 12

*Jimenez-Moreno v. Napolitano,*
    2012 WL 5995820 (N.D. Ill. Nov. 30, 2012) ...............................................1, 6, 8

*Jordan v. Jackson,*
    15 F.3d 333 (4th Cir. 1994) ....................................................................................26

*JP Morgan Chase Bank, N.A. v. McDonald,*
    2015 WL 6784238 (N.D. Ill. Nov. 6, 2015) .............................................................6

*Klipfel v. Bureau of Alcohol, Tobacco & Firearms,*
    1996 WL 566452 (N.D. Ill. Sept. 27, 1996) ............................................................5

*Lopez v. City of Chicago,*
    464 F.3d 711 (7th Cir. 2006) ..................................................................................19

*Marshall v. Jerrico, Inc.,*
    446 U.S. 238 (1980) ................................................................................................27

*Mendia v. Garcia,*
    2016 WL 2654327 (N.D. Cal. May 10, 2016) .........................................................23

*Michalski v. Decker,*
    No. 17CV9631, 2018 WL 317783 (S.D.N.Y. Jan. 4, 2018) .......................10, 12, 13

*Miranda-Olivares v. Clackamas County,*
    2014 WL 1414305 (D. Or. Apr. 11, 2014) ..............................................................23

*Olson v. Brown,*
    594 F.3d 577 (7th Cir. 2010) ...............................................................................7, 8

*Ortega v. ICE,*
    737 F.3d 435 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 48 (2014) .........................26

*Ozinga v. Price,*
    855 F.3d 730 (7th Cir. 2017) ....................................................................................8

*Parra v. Perryman,*
    172 F.3d 954 (7th Cir. 1999) ..................................................................................14

*Parvati Corp. v. City of Oak Forest, Ill.,*
    630 F.3d 512 (7th Cir. 2010) ...............................................................................7, 9

*Pugel v. Bd. of Trustees of Univ. of Illinois*,
   378 F.3d 659 (7th Cir. 2004) ...............................................................25

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999)............................................................................13

*Reno v. Flores*,
   507 U.S. 292 (1993)......................................................................29, 30

*Rhoden v. United States*,
   55 F.3d 428 (9th Cir. 1995), remand to No. CV-92-1840 (C.D. Cal.) *aff'd,*
   121 F.3d 716, 1997 WL 408786 (9th Cir. July 21, 1997)......................23

*Rivas v. Martin*,
   781 F. Supp. 2d 775 (N.D. Ind. 2011) .................................................21

*Sanchez Ochoa v. Campbell*,
   266 F.Supp.3d 1237 (E.D. Wa. 2017)...................................................23

*Schall v. Martin*,
   467 U.S. 253 (1984)......................................................................20, 26

*Shadwick v. City of Tampa*,
   407 U.S. 345 (1972).....................................................................17, 23

*Sharif ex rel. Sharif v. Ashcroft*,
   280 F.3d 786 (7th Cir. 2002) ...............................................................14

*Singh v. Gonzales*,
   499 F.3d 969 (9th Cir. 2007) .........................................................10, 13

*Sosna v. Iowa*,
   419 U.S. 393 (1975)..............................................................................9

*Tejada-Mata v. INS*,
   626 F.2d 721 (9th Cir. 1980) ...............................................................23

*Torres-Tristan v. Holder*,
   656 F.3d 653 (7th Cir. 2011) ...............................................................10

*Trotter v. Klincar*,
   748 F.2d 1177 (7th Cir. 1984) ...........................................................7, 9

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001)..............................................................................17

*United Phosphorus Ltd. v. Angus Chem. Co.*,
  322 F.3d 942 (7th Cir. 2003) (en banc) (overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012)) .......................................................6

*United States v. Beethoven Assocs. Ltd. P'ship*,
  843 F. Supp. 1257 (N.D. Ill. 1994) ...............................................................................5

*United States v. Salerno*,
  481 U.S. 739 (1987) ........................................................................................................25

*United States v. U.S. Dist. Court for E. Dist. of Mich.*,
  407 U.S. 297 (1972) ........................................................................................................17

*Villars v. Kubiatowski*,
  45 F. Supp. 3d 791 (N.D. Ill. 2014) ..............................................................................19

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ........................................................................................14

*Wellness Community-National v. Wellness House*,
  70 F.3d 46 (7th Cir. 1995) ...............................................................................................9

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ..................................................................................................11, 25

*Zhislin v. Reno*,
  195 F.3d 810 (6th Cir. 1999) ..........................................................................................14

## Constitution and Statutes

U.S. CONST., amend. IV ........................................................................................... *passim*

U.S. CONST., amend. V ....................................................................................2, 25, 28, 29

8 U.S.C. § 1229(b)(1) ...................................................................................................18

8 U.S.C. § 1252 ......................................................................................................... *passim*

8 U.S.C. § 1252(a)(5) .....................................................................................................10

8 U.S.C. § 1252(b)(9) .........................................................................................10, 11, 12

8 U.S.C. § 1252(g) ....................................................................................................13, 14

8 U.S.C. § 1357(a)(2) ................................................................................................. *passim*

8 U.S.C. § 1431(a) ...........................................................................................................4

8 U.S.C. § 1432 ................................................................................................................4

vi

Act of Feb. 20, 1907, c. 1134, § 20, 34 Stat. 904 .........................................................22

Act of June 25, 1798, ch. 58, § 2, 1 Stat. 571 ...............................................................22

Act of Mar. 3, 1903, ch. 1012, § 21, 32 Stat. 1218........................................................22

Act of May 10, 1920, ch. 174, 41 Stat 593 ....................................................................22

Act of Oct. 16, 1918, ch. 186, § 2, 40 Stat. 1012...........................................................22

Act of Oct. 19, 1888, ch. 1210, 25 Stat. 566..................................................................22

Internal Security Act of 1950, ch. 1024, Title I, § 22, 64 Stat. 1008...........................22

Pub. L. No. 82-414, 66 Stat. 163 (enacted June 27, 1952) ...........................................16

**Other Authorities**

8 C.F.R. § 287.3 ......................................................................................................17, 18

8 C.F.R. § 1003.14(a)......................................................................................................11

8 C.F.R. § 1003.19(d) .....................................................................................................11

Dept. of Justice, "Evolution of the U.S. Immigration Court System: Pre-1983"
    (updated April 30, 2015), *available at* http://www.justice.gov/eoir/evolution-
    pre-1983 (last visited Jan. 18, 2018).................................................................16

INS, Final Rule-Making, "Enhancing the Enforcement Authority of Immigration
    Officers," 59 FR 42406-01, 42411 (1994)........................................................24

Federal Rule of Civil Procedure 12(b)(1) ........................................................................5

Federal Rule of Civil Procedure 12(b)(6) ........................................................................6

## INTRODUCTION

On any given day, thousands of people sit in the custody of U.S. Immigration and Customs Enforcement ("ICE") without having received any hearing or prompt review by an immigration judge or other detached and neutral judicial officer. Named plaintiff Rony Chavez Aguilar is a U.S. citizen, and when he brought his claims, he had been in the custody of ICE officials in a county jail for more than two weeks with no removal proceedings initiated and no other judicial review or hearing on the horizon. Named plaintiff Irwin Rolle—also a U.S. citizen—was held in county jail for almost *two months* with no judicial review, no proceedings initiated, and no hearing scheduled. The Constitution would never permit federal prosecutors (or the county jail itself) to detain an individual for this length of time without a probable cause hearing. The law does not operate differently simply because the underlying reason for the detention was "civil" rather than criminal.

Both of these Plaintiffs have since been released—but only *after* they took the extraordinary step of pursuing this case, asserting statutory and constitutional claims in federal court on behalf of themselves and those similarly situated. As a result, Defendants cannot claim that their release deprives this Court of subject matter jurisdiction over this lawsuit. Both named Plaintiffs were in custody when they entered this lawsuit, so the issue raised by their release is one of mootness, not standing. And because this case is a class action, it falls within a well-established exception to the mootness doctrine for claims that are inherently transitory. Defendants' failure to acknowledge this exception is stunning; ICE officials made this same argument in a motion to dismiss in another detention-related class action, and another judge in this District properly rejected it, citing the "inherently transitory" exception. *See Jimenez-Moreno v. Napolitano*, 2012 WL 5995820, at *6–7 (N.D. Ill. Nov. 30, 2012). This Court should do the same.

1

Nor can Defendants avoid review in this case by relying on the "channeling" or jurisdiction-stripping clauses in the Immigration and Nationality Act ("INA"). Those clauses preclude judicial review of any claim arising out of removal proceedings until the entry of a final order of removal and prevent judicial challenges to the discrete, discretionary decision to commence removal proceedings. This case challenges the length of pre-hearing *detention*, not any removal decision or process. Indeed, by definition, this case challenges ICE's policies with respect to detained individuals *for whom no removal proceeding has been initiated*. For many individuals—including the named Plaintiffs here—there would presumably *never* be a final order of removal, so there would be no opportunity to challenge the detention-related policies at all. Moreover, Plaintiffs' claims—which, again, relate to the length of pre-hearing detention—could *never* be "efficaciously" raised through an appeal from a final order of removal, because by that time, a hearing will have been conducted and the harm suffered before that hearing would already be complete and irreparable. In effect, Defendants' interpretation of the INA's channeling and jurisdiction-stripping provisions would *eliminate* Plaintiffs' ability to challenge ICE's unlawful detention policies in court. This Court should reject that interpretation.

On the merits, Defendants' motion to dismiss depends on a misapprehension of the law and (in some instances) their own speculation about the facts. None of this can be the basis for a motion to dismiss. Again, the Second Amended Complaint alleges that the named Plaintiffs were arrested without a warrant (judicial or otherwise) and remained in ICE custody for *weeks* without any judicial review or hearing relating to their arrest and detention. This is more than sufficient to state a claim for relief under the Fourth Amendment, the Fifth Amendment, and the statute that created and governs ICE itself. In short, there is more than enough here to require denying Defendants' motion to dismiss.

## BACKGROUND

Plaintiffs brought this class action to challenge ICE's practice of subjecting people to indefinite detention without promptly initiating removal proceedings and providing review by an immigration judge. This case focuses in particular on ICE's Chicago Field Office, which covers Illinois, Indiana, Kansas, Kentucky, Missouri, and Wisconsin. Second Am. Compl. ("SAC") ¶ 2. The Chicago Field office detains thousands of people each year, often waiting days or weeks before commencing removal proceedings (if they do so at all). SAC ¶¶ 2, 7, 20, 47, 49. And even after official commencement of proceedings, many of these people are forced to sit in custody for additional weeks before appearing before a judge for the first time. *Id.* ¶¶ 2, 20.

After an initial warrantless arrest, the Chicago Field office does not promptly bring the person arrested before a detached and neutral judicial officer. *Id.* ¶¶ 2, 19. Instead, an ICE officer serves an I-200 administrative warrant (*id.* ¶¶ 2, 4, 20 & ex. A), which purports to be based on the arresting officer's finding of probable cause but lacks any sworn statement, any particularized facts, and any review by anyone outside the arresting officer's immediate chain of command. *Id.* ex. A. Further, even if a "Notice to Appear" ("NTA") is issued, the Chicago Field office often delays filing these documents with the immigration court—a step that is necessary to initiate removal proceedings. *Id.* ¶ 20. ICE's practices subject people to systematic, indefinite detention without prompt review and hearing before a judge to ensure that there is probable cause, that they understand the charges against them, that they are advised of their due process rights, and that there is an appropriate and adequate justification for their continued detention. All the while, these people remain imprisoned—separated from their loved ones, unable to work, unable to provide for their families, and deprived of their liberty.

Mr. Chavez Aguilar was born in Guatemala in 1984 and entered the United States in 1991 as a lawful permanent resident. *Id.* ¶¶ 22–23. His mother became a U.S. citizen in 1999,

when her son was 14 years old and in her legal and physical custody. *Id.* ¶¶ 24–25. As a result, he became a U.S. citizen by operation of law no later than 2001. *Id.* ¶ 26; 8 U.S.C. § 1431(a).

In January 2017, while Mr. Chavez Aguilar was in the custody of Kentucky law enforcement, ICE issued a detainer against him, asking the local authorities to hold him for 48 hours after he should otherwise be released so that ICE could assume physical custody. *Id.* ¶ 28. The authorities complied, and ICE brought him into federal custody on March 9, 2017. *Id.* ¶¶ 29–30. ICE held him in the Boone County Jail, with which it has a contract. *Id.* ¶ 30. Over the next 18 days, ICE issued him two different NTAs and mailed him an I-200 administrative warrant. *Id.* ¶ 31. As of March 27, 2017, however, ICE still had not filed any NTA with the immigration court, so it had not initiated removal proceedings or provided any judicial review of his arrest and detention. *Id.* ¶ 32. In short, Mr. Chavez Aguilar had been in county jail for more than two weeks without any review or hearing by a judge, as required by the Constitution and the INA. Without recourse through an administrative proceeding, Mr. Chavez Aguilar filed this lawsuit on behalf of himself and others similarly situated on March 27, 2017. Dkt. Nos. 1 & 2 (original complaint & motion for class certification).

Mr. Rolle was born in Jamaica in 1970 and entered the United States lawfully in 1988. SAC ¶¶ 35–36. At that time, his mother was a naturalized U.S. citizen, and he was only 17 and in her legal and physical custody. *Id.* ¶ 37. As a result, he became a U.S. citizen by operation of law immediately upon his immigration to the United States in 1988. *Id.* ¶ 38; 8 U.S.C. § 1432 (1988) (subsequently repealed).

ICE agents arrested Mr. Rolle without a warrant on June 28, 2017, when he had arrived at the offices of the Department of Homeland Security to check on a pending application. ICE then placed him in a county jail in Wisconsin, with which ICE has a contract. SAC ¶ 40. Mr. Rolle's

arrest and detention was never supported by any judicial determination of probable cause. *Id.* ¶ 6. By August 21, 2017, Mr. Rolle had been in ICE custody for 54 days, had never been before an immigration judge, and had no hearing scheduled. *Id.* ¶¶ 6, 42. Although ICE did give him an NTA on June 28, 2017, he was never informed that ICE had filed an NTA with the immigration court (*id.* ¶ 41), and ICE does not contend that it did so (*see generally* Mem.). Without recourse through an administrative proceeding, Mr. Rolle sought to intervene in this lawsuit on August 21, 2017. Dkt. Nos. 20 & 20-2 (Intervenor Complaint).

Defendants' memorandum contains a section titled "Overview of ICE Detention Practice." *See* Mem. 2–3. That section—most of which purports to describe the legal framework surrounding ICE's work with state and local law enforcement agencies—is of limited relevance to this case. This suit does not challenge ICE's policies for issuing immigration detainers against people who are otherwise in the custody of state and local law enforcement. Instead, it relates to what happens once the individual is arrested and held by ICE for a civil violation of the INA. It challenges the policies and practices through which ICE arrests and detains people without any judicial determination of probable cause, without initiating removal proceedings, and without promptly holding a hearing before an immigration judge.

## LEGAL STANDARD

Motions to dismiss for lack of jurisdiction under Rule 12(b)(1) are disfavored in the civil rights context. *United States v. Beethoven Assocs. Ltd. P'ship*, 843 F. Supp. 1257, 1260 (N.D. Ill. 1994); *see also Klipfel v. Bureau of Alcohol, Tobacco & Firearms*, 1996 WL 566452, at *3 (N.D. Ill. Sept. 27, 1996). When considering a motion that launches a factual attack against jurisdiction—as is the case here—the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether, in fact, subject matter jurisdiction exists. *Evers v. Astrue,* 536 F.3d 651,

656–57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616,

625 (7th Cir. 2007)); *see also, e.g., United Phosphorus Ltd. v. Angus Chem. Co.*, 322 F.3d 942,

946 (7th Cir. 2003) (en banc) (overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*,

683 F.3d 845 (7th Cir. 2012)).  At the same time, however, the court must accept as true all well-

pleaded factual allegations relating to jurisdiction and must draw all reasonable inferences in

favor of the plaintiffs.  *Evers*, 536 F.3d at 656.

To survive a motion to dismiss under Rule 12(b)(6), the plaintiffs' factual allegations

need only be specific enough "to raise a right to relief above the speculative level."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It is sufficient if these facts state a claim that is

"plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

at 570).  Again, in considering a motion to dismiss, "the court accepts all well-pleaded facts as

true and draws all reasonable inferences in favor of the plaintiff."  *JP Morgan Chase Bank, N.A.*

*v. McDonald*, 2015 WL 6784238, at *1 (N.D. Ill. Nov. 6, 2015).

## ARGUMENT

I.      **The release of the named Plaintiffs after they joined this case did not deprive them of standing or moot the class claims, which are inherently transitory.**

Defendants' motion to dismiss for lack of standing and mootness (*see* Mem. 6–8)

attempts to resurrect an argument that ICE officials have already made and lost in this District at

least once before.  *See Jimenez-Moreno v. Napolitano*, 2012 WL 5995820, at *3–7 (N.D. Ill.

Nov. 30, 2012).  The ICE officials in *Jimenez-Moreno* did exactly what these ICE officials are

trying to do:  they quickly lifted the detention with respect to the named plaintiffs and then

claimed that the putative class action should be dismissed for lack of standing.  The court

squarely rejected this legal strategy, applying the well-established exception to the mootness

doctrine for class actions with claims that are inherently transitory.  *Id.*  Defendants' motion

6

ignores that decision, as well as the governing case law from the Supreme Court and Seventh Circuit.

"When a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness," not standing. *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010). There is no dispute that Mr. Chavez Aguilar was in ICE custody "at the inception of the litigation" (*id.*), and that Mr. Rolle was in ICE custody when he initiated his own claims through his motion for leave to intervene. *See* SAC ¶¶ 32, 42. Thus, they both had standing whether they filed their respective complaints, though their circumstances have since changed.

The Supreme Court and the Seventh Circuit have long recognized that a change in circumstances for the named plaintiffs does not provide a basis for dismissing a class action if the claims are "inherently transitory." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)). To fall within this exception to mootness, the class claims must meet two elements. First, it must be "uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class." *Gerstein*, 420 U.S. at 110 n.11. Second, there must be "a constant class of persons suffering the deprivation complained of in the complaint." *Id.* If these criteria are present, the exception "allows the named plaintiff whose individual claims are moot to continue to act as a class representative." *Trotter v. Klincar*, 748 F.2d 1177, 1183 (7th Cir. 1984).

Plaintiffs' claims meet both criteria. ICE assumed physical custody of Mr. Chavez Aguilar on or around March 9, 2017. SAC ¶¶ 28–29. He filed his class action complaint and motion to certify a class on March 27, 2017 (Dkt. Nos. 1–2), and ICE released him before that motion could possibly have been resolved (Mem. 6). Similarly, ICE took Mr. Rolle into custody

7

around June 28, 2017. SAC ¶ 40. He moved to intervene on August 21, 2017 (Dkt. No. 20, 20-2), and he was released less than a month later (Mem. 6).

The fact that Defendants have discretion over the length of each individual's detention "is precisely what makes the 'inherently transitory' exception applicable." *Olson*, 594 F.3d at 583; *see also Moreno*, 2012 WL 5995820, at *7 (applying the "inherently transitory" exception "because Moreno and Lopez did not know when their claims would become moot," given that "the detainer against any plaintiff may be lifted for reasons that he or she cannot anticipate"). Here too, a detained individual has no control over how long Defendants will detain him before initiating removal proceedings, finally bringing him before a judge, or releasing him altogether. Any one of those events could moot his individual claims before class certification.

Moreover, the complaint alleges—and Defendants do not deny—that there will be "a constant class of persons suffering the deprivation complained of in the complaint" even after the named Plaintiffs' release. *Olson*, 594 F.3d at 582. In that respect, this case is entirely different from *Ozinga v. Price*, 855 F.3d 730 (7th Cir. 2017), *cited in* Mem. 5, 7. *Ozinga* was a challenge to government policies, but it was not a class action, and the government mooted the claims by changing the underlying policies themselves. *Id.* Here, while the named Plaintiffs' status has changed, the underlying policies have not. The Chicago Field Office still detains thousands of people each year and routinely holds them without promptly initiating removal proceedings or taking them before an immigration judge. SAC ¶ 7. This is precisely the kind of case for which the "inherently transitory" exception was created.

Defendants have not cited a single case to the contrary. Although they argue that subject matter jurisdiction must be reassessed every time the complaint is amended (Mem. 6–7), the principal case they cite for that proposition has no application here; that case does not concern

mootness and is not a class action in any event. *Wellness Community-National v. Wellness House*, 70 F.3d 46 (7th Cir. 1995), *cited in* Mem. 7 (reevaluating federal question/supplemental jurisdiction after an amended complaint had dropped all the federal claims). In the context of mootness in class actions, the Seventh Circuit has adopted a different rule, explaining that standing is evaluated "at the inception of the litigation." *Parvati*, 630 F.3d at 516. Beyond that point, any change in circumstances is an issue of "mootness," not standing. *Id*. And the well-established exception to the mootness doctrine "allows the named plaintiff whose individual claims are moot to continue to act as a class representative," even if his own, individual claims are not "capable of repetition, yet evading review," such that the "[class] certification may relate back to the filing of the original complaint." *Trotter*, 748 F.2d at 1183–84 (relying on *Sosna v. Iowa*, 419 U.S. 393, 402 n. 11 (1975)); *see also Gonzalez v. ICE*, 2014 WL 12605369, at *6–7 (C.D. Cal. Oct. 24, 2014) (holding in a factually similar class action that "the operative dates for determining Plaintiffs' standing are the dates they initially entered this action" and observing that any "confusion . . . generated by *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991)," cited here in Mem, 5 & 7, does not change the result). As a matter of law, the "inherently transitory" exception requires denying this aspect of Defendants' motion.

II.    **The INA's channeling and jurisdiction-stripping provisions do not preclude this Court from exercising jurisdiction over these claims, which challenge the circumstances of *detention*, rather than removal or removal proceedings.**

    Defendants also argue that this Court lacks jurisdiction because of "channeling" and jurisdiction-stripping provisions in the INA. Mem. 8–12. As discussed below, these arguments rest on a misreading of the scope of these provisions and a misunderstanding about the nature of the claims in this case.

    In 2005, Congress amended the INA to provide that "[j]udicial review of all questions of law and fact . . . arising from *any action taken or proceeding brought to remove an alien from*

9

*the United States* under this subchapter shall be available only in judicial review of a final order"

of removal, which occurs exclusively in the federal courts of appeals. 8 U.S.C. §§ 1252(b)(9),

(a)(5). The purpose of this limitation is to channel judicial review of removal orders into a single

proceeding in the court of appeals, "limit[ing] all aliens to one bite of the apple with regard to

challenging an order of removal." *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007) (quoting

*Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005)). As the Seventh Circuit has

explained, however, the channeling provisions in Section 1252 do *not* apply to "[a]ncillary

determinations made *outside* the context of a removal proceeding . . . ." *Torres-Tristan v.*

*Holder*, 656 F.3d 653, 658 (7th Cir. 2011) (emphasis added).

The channeling provisions have no effect on this case, which is about detention in the

*absence* of removal proceedings. *See, e.g.*, SAC ¶¶ 20, 30–32, 40–41, 45. This case challenges

challenge ICE's authority to *detain*—to make an arrest without a warrant and a proper showing

of probable cause and then to subject the individual to indefinite detention without initiating

removal proceedings and without taking the individual before a judge. *Id.* ¶¶ 19–20, 29–33, 40–

45, 49. By definition, then, the claims in this case are "outside the context of a removal

proceeding" (*Torres-Tristan*, 656 F.3d at 658), so they are not affected by the channeling

provisions. As one court recently explained, a challenge to the lawfulness of prehearing

detention is unaffected by Section 1252's provisions consolidating review of issues relating to a

removal order "for the common-sense reason that [petitioner] is not yet subject to one."

*Michalski v. Decker*, 2018 WL 317783, at *4 (S.D.N.Y. Jan. 4, 2018); *see also Casas-Castrillon*

*v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (9th Cir. 2008) ("Even post-[REAL ID Act of

2005], aliens may continue to bring collateral legal challenges to the Attorney General's

detention authority"); *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008) (discussing

the "critical" difference between challenges to removal and challenges to detention and explaining that federal district courts retain jurisdiction to hear the latter); *see also Aguilar v. ICE*, 510 F. 3d 1, 11, 17 (1st Cir. 2007) (holding that despite Section 1252(b)(9), "[d]istrict courts retain jurisdiction over challenges to the legality of detention in the immigration context"); 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . .").

Defendants' citation to *J.E.F.M.* (Mem. 9 n.4) only serves to highlight the difference between challenges to removal proceedings and challenges to detention. *J.E.F.M v. Lynch*, 837 F.3d 1026 (9th Cir. 2016). The plaintiffs in *J.E.F.M.* filed a class action alleging that they had a statutory and constitutional right to counsel in ongoing removal proceedings. Although the court held that those claims were barred by Section 1252, it affirmed that the channeling provisions do *not* bar claims that are "independent of or collateral to the removal process." *Id.* at 1032.

Even the regulations governing removal recognize that detention is independent of the removal process. *See* 8 C.F.R. § 1003.19(d) (providing that decisions on continued custody or bond "shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding"). And the Supreme Court itself has entertained challenges to detention that began in the district court, without raising any concern about subject matter jurisdiction. *See e.g.*, *Demore v. Kim*, 538 U.S. 510 (2003) (reviewing the constitutionality of detention without bond pending removal proceedings); *Zadvydas v. Davis*, 533 U.S. 678 (2001) (reviewing the constitutionality of detention without bond pending execution of a final order of removal).

Indeed, under Defendants' reasoning, they could avoid *any* challenge to their detention practices—a result that counsels against adopting their reading in the first place. *See INS v. St. Cyr*, 533 U.S. 289, 298 (2001) ("An outcome that would foreclose judicial review would be

11

inconsistent with the strong presumption in favor of judicial review of administrative action . . . ."). By the time a detained person receives his first hearing in removal proceedings, the harm caused by the prolonged detention without a judicial review will be complete and irreparable. Courts have recognized that claims that "cannot be raised efficaciously within the administrative proceedings delineated in the INA" are not to be subject to § 1252(b)(9) channeling provision. *Aguilar*, 510 F.3d at 11; *J.E.F.M.*, 837 F.3d at 1032 (where a plaintiff "would have no legal avenue to obtain judicial review" of his claims, Section 1252(b)(9) does not apply). This conclusion is bolstered by long-standing precedent demonstrating "a particular hostility toward requiring exhaustion when adequate relief could not feasibly be obtained through the prescribed administrative proceedings" or "when a party would be 'irreparably injured.'" *Aguilar*, 510 F.3d at 12 (quoting *Bowen v. City of New York*, 476 U.S. 467, 483 (1986) and citing *Matthews v. Eldridge*, 424 U.S. 319, 331 (1976)).

Defendants' position is also undermined by their own concession that Section 1252 does not strip this Court of the power to challenge a detention through a petition for habeas corpus. Mem. 10 ("where ICE has not yet filed an NTA with the immigration court, an alien's proper recourse to challenge detention would be a petition for a writ of habeas corpus"). As Defendants implicitly acknowledge, Section 1252 *does* limit an alien's ability to use a petition for habeas corpus to raise challenges relating to the removal process. *Michalski*, 2018 WL 317783, at *2. That has been true since the REAL ID Act of 2005, which amended Section 1252(b)(9) to eliminate habeas actions as an avenue to challenge orders of removal. *Id.* at *3 (citing *Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 324 n.3 (2d Cir. 2006)). As one court has explained, the amended language "provides that if a petitioner fails to consolidate a question of law or fact in a petition for review of an order of removal by the court of appeals, he cannot seek review *by*

*habeas or otherwise*." *Id.* (emphasis added). If a pre-hearing detention challenge can be raised through habeas—and Defendants concede it can (Mem. 10)—that must be because this kind of challenge is *not* something that must be consolidated as part of an appeal from a final order of removal. In short, Section 1252 does not stand in the way of *either* a habeas petition seeking an individual's release, *or* a class action lawsuit seeking to enjoin the unlawful detention practices.

The legislative history of the REAL ID Act supports this interpretation. *See Singh*, 499 F.3d at 978 (analyzing the legislative history). A House Conference Report concluded that the amended channeling provision would still "give every alien one day in the court of appeals, satisfying the constitutional concerns." *Id.* (citing H.R. Rep. No. 109–72, at 175, 2005 U.S.C.C.A.N. 240, 299). Further, the legislative history explains that the amendment "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders." H.R. Rep. No. 109–72, at 175; *see also Singh*, 499 F.3d at 978 ("Post–REAL ID Act cases considering the applicability of § 1252 have also distinguished between challenges to orders of removal and challenges that arise independently."). This underscores the critical difference between challenges to removal and challenges that are "independent" of removal, including challenges to detention practices themselves.

Finally, Defendants' motion also finds no support in Section 1252(g), which limits courts' jurisdiction to hear cases "arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has interpreted the section narrowly as "appl[ying] only to three discrete actions"—an action to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The

13

claims in this case do not challenge any such actions.  Instead, they challenge the legality and constitutionality of a policy allowing indefinite detention without an adequate determination of probable cause or a hearing before an immigration judge.

The Seventh Circuit cases cited by Defendants do not support their position.  For example, in *Sharif*, the Seventh Circuit held only that the federal courts did not have jurisdiction to consider a separate lawsuit challenging the government's decision to *remove* them; that decision should be challenged in a proper appeal from the agency's action.  *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787–88 (7th Cir. 2002); *accord Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002); *Botezatu v. INS*, 195 F.3d 311, 312 (7th Cir. 1999); *cf. Fornalik v. Perryman*, 223 F.3d 523, 532 (7th Cir. 2000) (claim "not that Attorney General is unfairly executing a removal order, but rather that a prior, unrelated error makes . . . removal improper" not precluded by Section 1252(g)).  Obviously, those cases fall within the heartland of Section 1252; they have nothing to do with a challenge to ICE's practice of detaining people indefinitely without even *initiating* removal proceedings.

For that kind of collateral challenge, the Seventh Circuit takes a different approach, holding that "Section 1252(g) . . . does not foreclose review."  *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (holding that a plaintiff's separate challenge to his detention during immigration proceedings was not foreclosed by § 1252(g)); *see also Zhislin v. Reno*, 195 F.3d 810, 811 (6th Cir. 1999) (reversing decision holding that Section 1252(g) deprived court of jurisdiction to consider action to challenge detention); *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (holding that Section 1252(g) "does not prevent the district court from exercising jurisdiction over plaintiffs' due process claims" [which] "constitute 'general collateral challenges

14

to unconstitutional practices and policies used by the agency'") (quoting *McNary v. Haitian Refugee Ctr. Inc.*, 498 U.S. 479, 492 (1991)).

In short, the application of Section 1252's channeling and jurisdiction-stripping provisions depends on whether the lawsuit relates to detention or removal. This case is about detention before any removal proceeding is commenced, so Section 1252 does not apply. Defendants' interpretation of Section 1252 would effectively foreclose *any* judicial review of their practice of arresting and detaining people—often for weeks or more—without opening a removal proceeding or providing any review by an immigration judge. Such an interpretation would violate the established principle that "the agency does not have the final say on constitutional matters; instead, that power rests with the courts." *Gomez-Chavez*, 308 F.3d at 800 (quotation omitted).

## III.     The Second Amended Complaint states three independent claims for relief.

### A.     Plaintiffs have stated a claim based on the INA because the statutory grant of warrantless arrest authority requires bringing the individual before an immigration judge "without unnecessary delay."

The practices alleged in the complaint exceed the powers granted to Defendants by Congress. The INA empowers an ICE officer to make a warrantless arrest only if the officer

> has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, *but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States*;

8 U.S.C. § 1357(a)(2) (emphasis added). Defendants' principal argument is that this provision does not require a hearing before an immigration judge specifically; any "officer of the Service" will do. Mem. 12–13. This is inconsistent with the text of the statute, the history of the "Service," and binding precedent of the Seventh Circuit.

15

The Seventh Circuit has held that the term "officer of the Service" refers to an immigration judge. *Arias v. Rogers*, 676 F.2d 1139, 1142 (7th Cir. 1982) ("The reference is to a special inquiry officer, also called an immigration judge."). As the Seventh Circuit correctly observed in *Arias*, when § 1357(a)(2) was passed into law in 1952, immigration adjudicators—known at the time as "special inquiry officers"—were part of what was then called the Immigration and Naturalization Service ("the Service") and were the "officers . . . having the authority to examine aliens as to their right to enter or remain in the United States." 676 F.2d at 1142 (citing 8 U.S.C. § 1357(a)(2)); *see also* Pub. L. No. 82-414, 66 Stat. 163 (enacted June 27, 1952) (stating in INA § 236(a) (exclusion proceedings) that "[a] special inquiry officer shall conduct proceedings under this section . . . . [and] shall have the authority in any case to determine whether an arriving alien who has been detained . . . shall be allowed to enter or shall be excluded and deported," and in INA § 242(b) that "[a] special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien . . . and shall make determinations, including orders of deportation"). After 1973, however, "special inquiry officers" were authorized to use the title "immigration judge." Dept. of Justice, "Evolution of the U.S. Immigration Court System: Pre-1983" (updated April 30, 2015), *available at* http://www.justice.gov/eoir/evolution-pre-1983 (last visited Jan. 18, 2018). Ten years later, the immigration court and its judges were separated from the Service and placed in the newly established Executive Office of Immigration Review. *Id.* Accordingly, when Section § 1357(a)(2) refers to a hearing before an "officer of the Service," it contemplates that anyone who has been subject to a warrantless arrest must be afforded a prompt hearing *before an immigration judge*.

Further, Defendants' claim that any "officer of the Service" satisfies Section 1357(a)(2) would make the subsequent qualifying statutory language—"having the authority to examine aliens as to their right to enter or remain in the United States"—superfluous and without any effect. As the Supreme Court has explained, "It is a cardinal principle of statutory construction that a statute out, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotations and citations omitted).

At a minimum, this reading of Section 1357(a)(2) is necessary under principles of constitutional avoidance. To the extent there is any ambiguity in the term "officer of the Service having authority to examine aliens as to their right to enter or remain in the United States," that term must be understood to refer to a detached, neutral judicial officer like an immigration judge. *See United States v. U.S. Dist. Court for E. Dist. of Mich.*, 407 U.S. 297, 317 (1972) ("Fourth Amendment does not contemplate the executive [enforcement] officers of Government as neutral and disinterested magistrates"); *Shadwick v. City of Tampa*, 407 U.S. 345, 348–50 (1972) (explaining that the term "magistrate" is flexible so long as the judicial officer is "neutral and detached" from the activities of law enforcement); *Arias*, 676 F.2d at 1142 (Fourth Amendment would require that the hearing contemplated in § 1357(a)(2) be before an immigration judge). Plaintiffs do not contend that this judicial officer must be a magistrate or a judge appointed under Article III; for purposes of Section 1357(a)(2), an immigration judge would suffice. Yet the practices alleged in the Second Amended Complaint do not provide even that much.

Defendants cannot avoid these points by relying on 8 C.F.R. § 287.3—the regulation requiring a prompt examination "by an officer other than the arresting officer." This regulation was codified in 1952, well before the Seventh Circuit's decision in *Arias*, and it does not and

17

cannot supersede the statute. In fact, the *Arias* court interpreted 8 C.F.R. § 287.3 as requiring that the special inquiry officer (the immigration judge) have "the same authority that a committing magistrate would have" in cases in which the "an alien . . . has been arrested without a warrant pursuant to 8 U.S.C. § 1357(a)(2)." 676 F.2d at 1143. The court's conclusion that "the safeguards provided by the INS against illegal detention [were] constitutionality adequate" explicitly relied on the premise that "the authority of the special inquiry officer" is "as broad as a committing magistrate's." *Id.* The regulation does not and cannot upset that ruling.

Finally, Defendants' argument that the statute requires 10 days' notice is a non sequitur. *See* Mem. 12–13. As Defendants concede, this 10-day period is required only after ICE files an NTA. Under the practices alleged in the Second Amended Complaint, however, ICE often waits an indefinite period of time before it files the NTA and triggers that 10-day clock. Moreover, the case Defendants cite considered a different question entirely—that is, whether the court had jurisdiction under separate deportation provisions through which a convicted inmate sought a deportation waiver. *See Hernandez v. INS*, 2010 WL 126179, at *1 (D. Kan., Jan. 11, 2010). The *Hernandez* case does not consider whether ICE officers must (or are even permitted to) wait 10 days after a warrantless arrest and detention before bringing an alien before an immigration judge. And in any event, the statute allowing a detainee to request a hearing in writing (8 U.S.C. § 1229(b)(1)) relates by its terms to a master calendar hearing—not to the initial examination by the immigration judge after a warrantless arrest, as required under Section 1357(a)(2).

In short, ICE officers systematically exceed their power under the INA when they make warrantless arrests and then fail to bring the arrestees before an immigration judge without undue delay. Plaintiffs' allegations on this point are more than sufficient to state a claim under the

18

Administrative Procedure Act and the terms of the INA. The Court should deny Defendants' motion to dismiss this claim.

>    **B.    Plaintiffs have stated a claim under the Fourth Amendment because Defendants' detention practices do not grant a prompt hearing before an immigration judge.**

The Second Amended Complaint also states a claim under the Fourth Amendment, which requires a "judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein*, 420 U.S. at 114. A judicial determination of probable cause involves a neutral judicial officer (here, at least an immigration judge) and can be made "either through an arrest warrant or through a probable cause hearing, also called a *Gerstein* hearing, promptly after the arrest." *Lopez v. City of Chicago*, 464 F.3d 711, 718 (7th Cir. 2006); *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) (hearing required within 48 hours); *Villars v. Kubiatowski*, 45 F. Supp. 3d 791, 801 (N.D. Ill. 2014) (Dow, J.) ("The forty-eight hour framework set forth in *County of Riverside* 'governs the length of time which may elapse before a probable cause hearing' in cases involving extended detention.") (quoting *Chortek v. City of Milwaukee*, 356 F.3d 740, 746 (7th Cir. 2004)).

Defendants argue that the requirements of criminal procedure do not apply here, because these Plaintiffs were merely subjected to "the civil administrative processes of deporting removable aliens." Mem. 14–20. That administrative process (according to Defendants) allows the probable cause determination to be made by *any* ICE officer, even in the case of a warrantless arrest. *Id*. at 15 (citing 8 C.F.R. § 287.3(d)). For the reasons discussed above, that argument misreads the governing statute. *See supra* III.A. But even aside from that problem, Defendants' arguments about the Fourth Amendment are wrong as a matter of fact and law.

As an initial matter, Mr. Rolle and Mr. Chavez Aguilar are *not* "removable aliens"—an express premise of Defendants' argument. Mem. 14. Indeed, they are both U.S. citizens, and

they allege that they were seized without a warrant, deprived of their liberty, and held against their will for weeks in a county jail. It defies common sense to say that this is merely a "civil administrative process" to which constitutional limitations do not apply. The Fourth Amendment would prevent prosecutors from the Department of Justice from holding them in jail for weeks at a time without any judicial determination of probable cause; surely it applies no differently when the offending officers are with the Department of Homeland Security.

Moreover, the Supreme Court in *Gerstein* explained that "a fair and reliable determination of probable cause" is a requirement "for *any* significant pretrial restraint on liberty . . . ." 420 U.S. at 125 (emphasis added). The Court's concerns about the "consequences of prolonged detention" are the same regardless of the nature of the type of proceeding, as *any* confinement "may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Id.* at 114. This is undoubtedly why the Supreme Court has already applied *Gerstein* in the context of civil detentions. *See Schall v. Martin*, 467 U.S. 253, 274–77 (1984) (citing *Gerstein* in discussing the constitutionality of pretrial detentions in the context of civil juvenile delinquency).

Defendants cite a footnote in *Gerstein* saying that the requirement for a neutral and detached magistrate is not easily transferable to civil proceedings (Mem. 16), but that citation is misleading. The footnote they cite discusses Justice Stewart's concurrence, in which he accuses the *Gerstein* majority of offering less procedural protection to a person in jail than it requires in certain civil cases. 420 U.S. at 125 n.27. Nothing in that footnote suggests that the civil/criminal distinction is dispositive when—in either event—the individual is entirely deprived of his liberty and thrown in jail.

20

Courts in the Seventh Circuit have recognized that the Fourth Amendment's protections apply to immigration arrests. Indeed, the Seventh Circuit's decision in *Arias* and its interpretation of the statute were themselves grounded in the requirements of the Fourth Amendment. The court there said that "immigration laws, specifically 8 U.S.C. § 1357(a)(2) . . . require[] that an alien arrested without a warrant 'be taken without unnecessary delay'" before an immigration judge who functions as the equivalent to a "committing magistrate in a criminal proceeding." 676 F.2d at 1142. The court specifically held that the petitioners in that case would have "been entitled to obtain their freedom" by challenging their detention under the Fourth Amendment "[i]f the petitioners had been arrested illegally by INS officers and carted off to jail and the INS had made no move to begin deportation proceedings . . . ." *Id.* at 1142; *cf. Buquer v. City of Indianapolis*, 797 F. Supp. 2d 905, 918–19 (S.D. Ind. 2011) (preliminary injunction); *Buquer v. City of Indianapolis*, 2013 WL 1332158, at *10 (S.D. Ind. 2013) (permanently enjoining Indiana state law that sought to permit law enforcement agencies to make an arrest based on issuance of an immigration detainer, holding that it violates the Fourth Amendment because, among other reasons, "[t]here is no mention of any requirement that the arrested person be brought forthwith before a judge for consideration of detention or release"); *Rivas v. Martin*, 781 F. Supp. 2d 775, 780 (N.D. Ind. 2011) (holding that a judicial determination of probable cause is required promptly after an immigration arrest and that the plaintiff stated a claim that her detention for more than 48 hours without a probable cause determination was unconstitutional).

The Supreme Court's decision in *Lopez-Mendoza* does not hold otherwise. *See* Mem. 15 (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984)). That case merely recognizes that a trial-specific constitutional remedy—namely, the exclusionary rule—does not apply in a deportation

hearing in the same way it does in a criminal proceeding. That is because the two kinds of proceedings are necessarily different, with the deportation proceeding "intended to provide a streamlined determination of eligibility to remain in this country, nothing more." 48 U.S. at 1039, 1041–51. That decision does not suggest that the Constitution would apply differently to an outright deprivation of liberty, which would have the same drastic consequences for the detainee regardless of whether the underlying offense is civil or criminal.

Defendants' reliance on *Abel* is no better. *See* Mem. 14, 16–18 (citing *Abel v. United States*, 362 U.S. 217 (1960)). The *Abel* Court expressly limited its opinion to whether a *search* incident to an arrest on an immigration warrant was lawful; it explained that "[a]t no time did petitioner question the legality of the administrative arrest procedure either as unauthorized or as unconstitutional." 362 U.S. at 231. Here, Plaintiffs challenge the legality of the arrest and detention itself, and thus they are litigating the very issue that the *Abel* Court did not consider. And for the same reason, Defendants' position in this case finds no support in what *Abel* describes as the "overwhelming historical legislative recognition of the propriety of administrative warrant[s]." Mem. 16 (quoting *Abel*, 362 U.S. at 233); *see id.* at 15 n.6. The Acts of 1798, 1888, 1903, and 1907 applied only to individuals who were already subject to a deportation order or were recent unlawful arrivals; it did not authorize new arrests and detentions of aliens (much less of U.S. citizens) without any judicial review. *See* Act of June 25, 1798, ch. 58, § 2, 1 Stat. 571; Act of Oct. 19, 1888, ch. 1210, 25 Stat. 566; Act of Mar. 3, 1903, ch. 1012, § 21, 32 Stat. 1218; Act of Feb. 20, 1907, c. 1134, § 20, 34 Stat. 904. The Acts of 1917, 1918, and 1920 illustrate that administrative arrests were authorized, but do not discuss whether the arrested individuals were promptly brought before a neutral official. *See* Act of Oct. 16, 1918, ch. 186, § 2, 40 Stat. 1012; Act of May 10, 1920, ch. 174, 41 Stat 593; Internal Security Act of

22

1950, ch. 1024, Title I, § 22, 64 Stat. 1008. And in any event, *Gerstein*—decided 15 years after *Abel*—clarified and strengthened the Fourth Amendment requirements of independence and neutrality. Following *Gerstein*, it is clear that the Fourth Amendment requires, "as a prerequisite to extended restraint of liberty following arrest," a probable cause determination by a judicial official who is fully independent of the prosecuting agency. *Gerstein*, 420 U.S. at 114.

Defendants' brief also misreads the authority from the Ninth Circuit. *See* Mem. 16. For example, *Rhoden* held that the plaintiff—a permanent resident alien—was entitled to Fourth Amendment protections based on his warrantless *civil* immigration arrest at the border, including a prompt probable cause hearing. *See Rhoden v. United States*, 55 F.3d 428, 432 (9th Cir. 1995) (emphasis added) ("In particular, Rhoden was entitled to Fourth Amendment protection against unlawful seizures."), *remand to* No. CV-92-1840 (C.D. Cal.) (Hupp, J.), *aff'd Rhoden v. Dep't of Justice*, 121 F.3d 716, 1997 WL 408786 (9th Cir. July 21, 1997) (unpubl.) (affirming district court's finding that 48-hour detention without a hearing was unreasonable); *see also, e.g.*, *Sanchez Ochoa v. Campbell*, 266 F.Supp.3d 1237, 1249 (E.D. Wa. 2017) (describing the Fourth Amendment rights pursuant to a civil immigration arrest to include *Gerstein* and *Shadwick* protections); *Mendia v. Garcia*, 2016 WL 2654327, at *5–6 (N.D. Cal. May 10, 2016) (immigration detainer triggers Fourth Amendment protections); *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305, at *9–10 (D. Or. Apr. 11, 2014) (continuation of detention based on an ICE detainer constituted a "new arrest, and must be analyzed under the Fourth Amendment"). Even *Tejeda-Mata*—which Defendants cite in attempting to distinguish civil from criminal proceedings (Mem. 16)—applied "the constitutional requirement of probable cause" to immigration arrests. *Tejada-Mata v. INS*, 626 F.2d 721, 724–25 (9th Cir. 1980).

23

In fact, Defendants' argument that *Gerstein* does not apply in civil proceedings contradicts their own official statements. The Immigration and Naturalization Service ("INS")— ICE's predecessor agency—has previously acknowledged that it is "clearly bound" by *Gerstein* and other precedents "regarding arrest and post-arrest procedures." *See* INS, Final Rule-Making, "Enhancing the Enforcement Authority of Immigration Officers," 59 FR 42406-01, 42411 (1994) (discussing final regulations regarding immigration officers' authority to make administrative warrantless arrests under 8 U.S.C. § 1357(a)(2)). As Defendants concede in their brief before this Court, "references to the former INS 'shall be deemed to refer to' the appropriate DHS official or component." Mem. 19 (quoting 6 U.S.C. § 557).

To be sure, at least one lower federal court has adopted language that appears more favorable to Defendants' position. *See* Mem. 13 (citing *Gonzalez v. ICE*, 2017 WL 2559616 (C.D. Cal., June 12, 2017)).[1] Yet even that case did not do what Defendants are inviting the Court to do here—that is, dismiss outright a Fourth Amendment challenge to ICE's practice of subjecting people to indefinite detention without review by *any* kind of neutral judicial officer— Article III, magistrate, or administrative—merely because the detention purported to be "civil" in nature. This Court should decline Defendants' invitation.

---

[1] That court appears to have misread *Gerstein* as not addressing whether the Fourth Amendment requires prompt review by a judicial officer absent a warrant. *Compare Gonzalez*, 2017 WL 2559616, at *5 *with Gerstein*, 420 U.S. at 125. While the Supreme Court recognized that the procedures required to obtain a judicial probable cause determination may differ in criminal and civil contexts, it did not authorize elimination of the judicial determination requirement altogether, much less find that it has no application to civil immigration detention. *Gerstein*, 420 U.S. at 119–25. Indeed, the *Gerstein* Court's reasoning suggests that the need for a neutral, judicial probable cause determination may be even more urgent when it comes to deprivations of liberty in civil contexts. *See id.* at 125 n.17.

**C.  Plaintiffs have stated a claim under the Fifth Amendment, because Defendants' detention practices deprive individuals of their liberty without any meaningful opportunity to be heard.**

Defendants' practices also violate the Fifth Amendment's guarantees of procedural and substantive due process.  In the United States, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979).  There can be no doubt that this principle applies in the immigration context, as the Supreme Court has recognized that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690.

**1.  Plaintiffs have adequately alleged that ICE's practices deprive them of procedural due process.**

 "A procedural due process claim requires a two-fold analysis.  First, [the court] must determine whether the plaintiff was deprived of a protected interest; second, [the court] must determine what process is due." *Pugel v. Bd. of Trustees of Univ. of Illinois*, 378 F.3d 659, 662–63 (7th Cir. 2004).  The first part of this inquiry is easily satisfied here.  Defendants deprived Plaintiffs of their liberty.  *See* U.S. CONST. amend. V (no person shall "be deprived of life, liberty, or property, without due process of law"); *see Salerno*, 481 U.S. at 746.  The next question, then, is "what process is due?"

"To evaluate the adequacy of procedural protections in a particular situation," courts consider "'[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" *Pugel*, 378 F.3d at 663 (quoting *Gilbert v. Homar*, 520 U.S. 924, 931–32 (1997), quoting

*Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)).  Under these factors, far more process is "due" than what Defendants currently provide.

*First*, the private interest affected by Defendants' practices is deeply significant; again, it is nothing less than an individual's liberty.  This is more than sufficient to trigger a right to a meaningful process.  *See Ortega v. ICE*, 737 F.3d 435, 439 (6th Cir. 2013) *cert. denied*, 135 S. Ct. 48 (2014) ("prison confinement" due to an ICE detainer "suffice[s] to trigger due process."); *Schall*, 467 U.S. at 269–70 (civil detention of juveniles pending delinquency proceedings requires prompt presentment and probable cause hearing). "Promptness is the touchstone" of any due process analysis into the timeliness of post-deprivation review.  *Jordan v. Jackson*, 15 F.3d 333, 349 (4th Cir. 1994).

*Second*, the risk of "erroneous deprivation" is high.  Defendants insist that the arresting officer's probable cause determination—such as it is—need not be subjected to any neutral and detached review whatsoever, even by an immigration judge.  *E.g.*, Mem. 14.  As a result, there is a significant risk that an individual who is not deportable (or otherwise eligible for release) will be confined for an extended period of time.  That was certainly the case for both of the named Plaintiffs, who are U.S. citizens and *cannot* be deported.  Prompt judicial review in this context is essential as a check on both mistake and abuse of power. *Corley v. United States*, 556 U.S. 303, 309, 320 (2009).

*Third*, Defendants' claimed governmental interest "in maintaining the current scheme" simply comes down to an allocation of resources.  Mem. 22–23.  Defendants have not cited a single case suggesting that a court can refuse to recognize due process rights merely because it would be expensive for the government to hire the personnel necessary to protect them.

26

Under these circumstances, the Due Process Clause requires that a detained individual promptly have access to "an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The neutrality requirement "safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process." *Id.*

Further, the "right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("[T]he root requirement of the Due Process Clause [is] . . . that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty] interest."); G*ates v. City of Chicago*, 623 F.3d 389, 401 (7th Cir. 2010) ("Due process requires, at a minimum, that" notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). Defendants' current practices do not provide any such meaningful opportunity. Indeed, Mr. Rolle was held for *54 days* without any opportunity to be heard at all—much less before a neutral judicial officer.

Defendants cannot avoid these arguments by pointing to "distinctions between the rights of aliens and citizens" (Mem. 20). For example, *the named Plaintiffs in this case are U.S. citizens*, and yet Defendants' practices allowed them to be detained for weeks without any opportunity to be heard. Further, Defendants cannot claim that "[a]liens have no *statutory* rights to judicial review of a probable cause determination." *Id*. (emphasis added). In this respect,

Defendants' arguments against the constitutional claims collapse into the same flawed arguments they make against the statutory claim. All these arguments depend on the idea that for a warrantless arrest, the statute's reference to an "officer of the Service" means something other than an immigration judge. The Seventh Circuit has held otherwise. *See supra* III.A (discussing 8 U.S.C. § 1357(a)(2)).

Finally, Defendants' demand for "evidence" to support Plaintiffs' claims (Mem. 21)—like their speculation about the costs and risks (*id*. at 23)—has no place in a motion to dismiss. Based on the facts pleaded here—where the named Plaintiffs were held for weeks without any review by an immigration judge—it is at least "plausible" that Defendants' practices violate the procedural protections of the Fifth Amendment. If Defendants truly contend that a prompt judicial hearing will have no effect—or would potentially be harmful, as they suggest (*id.* at 21)—they are free to develop evidence to that effect. For present purposes, however, the allegations in the Second Amended Complaint are more than sufficient to present a plausible claim for relief.

### 2. Plaintiffs have adequately alleged a claim based on substantive due process.

The Due Process Clause also contains a substantive component "barring certain government actions regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotation omitted). Substantive due process protects against the arbitrary and oppressive exercise of government power, as well as against conduct that shocks the conscience. *Id.* at 846–47.

With respect to civil detention, substantive due process grants individuals the right to prompt presentment before an immigration judge because the detainee "face[s] the same sort of ultimate sanction as if he defended himself from a criminal charge—the loss of liberty." *Armstrong v. Squadrito*, 152 F.3d 564, 574–75 (7th Cir. 1998). As the Seventh Circuit has

explained, "[t]he first appearance has such great value in protecting numerous rights that its denial presumptively disrupts those rights. As a matter of constitutional prophylaxis, the denial of a first appearance offends the Due Process Clause." *Id.* at 573. The Seventh Circuit has applied these protections to both criminal and civil detention. *Id.* at 581–82 ("We have already concluded that this case invokes the same substantive due process right . . . despite Armstrong's arrest under civil, rather than criminal, law."). Therefore, Defendants cannot create an arbitrary distinction between criminal and civil detention as a basis for seeking dismissal of Plaintiffs' Fifth Amendment claim.

Courts have found that delays similar in duration to those that the named Plaintiffs experienced violate substantive due process. In *Armstrong*, for example, the court called the defendants' conduct "condemnable" and said it violated Armstrong's substantive due process rights when a sheriff's office held him for 57 days following his arrest for failing to appear in court for a hearing regarding child support arrearages. *Id.* at 582; *see also Hayes v. Faulkner Cty.*, Ark., 388 F.3d 669, 675 (8th Cir. 2004) (38-day detention following arrest for failing to appear at a municipal court hearing "shocks the conscience" and "deprived [Plaintiff] of substantive due process); *Coleman v. Frantz*, 754 F.2d 719, 724 (7th Cir. 1985) (18-day detention without court appearance violated substantive due process). The detentions in this case are not materially different; these plaintiffs were held for 18 and 54 days, respectively, without *any* relevant infraction.

Defendants' citation to *Flores*—a case about the rights of minors released from INS custody—has little relevance here. In that case, the Court considered the narrow question whether substantive due process creates a "right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the

custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." *Reno v. Flores*, 507 U.S. 292, 302 (1993). According to *Flores*, no court "has ever held that a child has a constitutional right not to be placed in a decent and humane custodial institution if there is available a responsible person unwilling to become the child's legal guardian but willing to undertake temporary legal custody." *Id.* at 303. The Court held that nonpunitive government custody with "decent and humane" conditions "surely does not violate the Constitution." *Id.*

Plaintiffs' challenge to ICE's detention practices is far less novel than the challenge the Court considered in *Flores*. To be sure, "[t]he purpose of *deportation* is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws." *Lopez-Mendoza*, 468 U.S. at 1032, 1039 (emphasis added). But the purpose of *detention* may well be different, particularly if the individual is detained indefinitely, without any judicial review. At a minimum, Plaintiffs have made sufficient allegations to allow this claim to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss. This case should proceed to discovery and class certification.

Dated: January 19, 2018                    Respectfully submitted,

                                           Rony Chavez AGUILAR, *et al*.

                                           By: /s/   Linda T. Coberly
                                           *One of Plaintiffs' Attorneys*

                                           Linda T. Coberly
                                           Jason Z. Pesick
                                           WINSTON & STRAWN LLP
                                           35 West Wacker Drive
                                           Chicago, IL 60601
                                           312-558-5600

                                           Mark M. Fleming
                                           Charles Roth
                                           NATIONAL IMMIGRANT JUSTICE CENTER
                                           208 South LaSalle Street, Suite 1300
                                           Chicago, IL 60604
                                           312-660-1628

**CERTIFICATE OF SERVICE**

The undersigned counsel for Plaintiffs hereby certifies that on this 19th day of January, 2018, she caused a copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS to be served via CM/ECF to all parties and counsel of record.

/s/  Linda T. Coberly