**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RONY CHAVEZ AGUILAR, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 17-cv-2296 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT CHICAGO FIELD | ) | |
| OFFICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Rony Chavez Aguilar and Irwin Rolle ("Plaintiffs") filed this putative class action on behalf of themselves and all others similarly situated against Defendants U.S. Immigration and Customs Enforcement Chicago Field Office; Elaine Duke, Acting Secretary for Homeland Security; Thomas Homan, Acting Director of U.S. Immigration and Customs Enforcement; and Ricardo Wong, Director of the U.S. Immigration and Customs Enforcement Chicago Field Office; alleging that Defendants have failed to meet their obligations under the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (Count I) and have violated Plaintiffs' rights under the Fourth and Fifth Amendments (Counts II–III). Currently before the Court is Defendants' motion [27] to dismiss all claims in Plaintiffs' Second Amended Complaint [24] for lack of jurisdiction, or, in the alternative, for failure to state a claim. For the reasons stated below, Defendants' motion [27] is granted. Counts I–III in the Second Amended Complaint are dismissed. Plaintiffs are given until October 29, 2018 to file an amended complaint if they choose to do so. This case is set for a further status hearing on November 13, 2018 at 9:00 a.m.

## I. Background[1]

Defendant United States Immigration and Customs Enforcement Chicago Field Office ("ICE Chicago") enforces immigration laws in Illinois, Indiana, Kansas, Kentucky, Missouri, and Wisconsin. [24, ¶ 15.] ICE Chicago and its agents are responsible for the policies and practices related to the arrest and detention of individuals for prosecution in removal proceedings within that area. [*Id.*]

Defendants Elaine Duke, Thomas Homan, and Ricardo Wong are the Acting Secretary for the U.S. Department of Homeland Security ("DHS"), Acting Director of United States Immigration and Customs Enforcement ("ICE"), and Director of ICE Chicago, respectively. [*Id.* ¶¶ 16–18.] Defendants Duke and Homan are responsible for, among other things, the policies and practices of ICE related to the arrest and detention of individuals for prosecution in removal proceedings. [*Id.* ¶¶ 16–17.] Defendant Wong is responsible for, among other things, the development and implementation of ICE Chicago's policies and practices related to the arrest and detention of individuals for prosecution in removal proceedings. [*Id.* ¶ 18.] Each is sued in his or her official capacity. [*Id.* ¶¶ 16–18.]

Plaintiff Chavez was born in Guatemala in 1984 and entered the United States with his mother as a Lawful Permanent Resident ("LPR") in 1991. [*Id.* ¶¶ 22–23.] His mother became a U.S. citizen in 1999 through the naturalization process. [*Id.* ¶ 24.] Because Chavez was an LPR, 14 years old, and in his mother's legal and physical custody, he became a U.S. citizen by law no later than February 27, 2001. [*Id.* ¶¶ 24–25.] Since Chavez was at all times pertinent to this

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

litigation a U.S. citizen, ICE had no lawful authority to arrest or detain him or subject him to removal proceedings.  [*Id.* ¶ 27.][2]

Plaintiff Rolle was born in Jamaica in October 1970 and entered the United States as a LPR in March 1988.  [*Id.* ¶¶ 35–36.]  When he entered the United States in March 1988, Rolle's mother was a naturalized U.S. citizen.  [*Id.* ¶ 37.]  Because Rolle was an LPR, 17 years old, and in his mother's legal and physical custody, he became a U.S. citizen by law upon his entry.  [*Id.* ¶¶ 37–38.]  Given that Rolle is a U.S. citizen, ICE has no lawful authority to arrest or detain him or subject him to removal proceedings.  [*Id.* ¶ 39.]

Plaintiffs allege that ICE Chicago detains thousands of people each year, often waiting days or weeks before commencing removal proceedings.  [24, ¶¶ 2, 7, 20,47, 49.]  Even after the official commencement of proceedings, Defendants allegedly force many detainees to wait in custody for additional weeks before seeing a judge for the first time.  [*Id.* ¶¶ 2, 20.]  During this period, ICE does not provide the detainee: (1) a sworn, particularized statement of probable cause; (2) a determination of probable cause before a detached and neutral judicial officer; or (3) a hearing before an immigration judge regarding the charges against them, the availability of attorney representation and other rights, and judicial review of their continued custody.  [*Id.* ¶ 3.]

Instead, according to Plaintiffs, ICE Chicago typically serves detainees with an I-200 administrative warrant after they are brought into ICE custody.  [*Id.* ¶ 4.]  Such warrants are not reviewed or approved by a detached and neutral judicial officer, nor supported by a sworn, particularized showing of probable cause.  [*Id.*]  Rather, the warrant purports to be a based on the arresting officer's finding of probable cause.  [*Id.* ex. A.]  Plaintiffs allege that these practices and

---

[2] On May 31, 2018, Plaintiffs informed the Court that Plaintiff Chavez passed away on or about May 15, 2018.  [53.]  All parties agreed that the action could continue with Rolle as the named plaintiff and that the agreement would have no effect on the parties' arguments as to the motion to dismiss.  [*Id.*]

policies are insufficient to meet Defendants' responsibilities under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq, specifically 8 U.S.C. § 1357(a)(2), and violate Plaintiffs' Fourth and Fifth Amendment rights. [*Id.* ¶¶ 19–20.]

Specifically, Plaintiffs allege that on or around March 9, 2017, ICE Chicago assumed physical custody of Chavez after issuing an immigration detainer to a Kentucky law enforcement agency that previously had held him. [*Id.* ¶¶ 28–30.] When the instant lawsuit was filed on March 27, 2017 [1], Chavez had been in ICE custody for 18 days.[3] [*Id.* ¶ 5.] While in ICE custody, Chavez received two different Notices to Appear ("NTA")[4] and was mailed an I-200 administrative warrant. [*Id.* ¶ 31.] As of the initiation of this lawsuit, however, ICE Chicago had not filed an NTA against Chavez with the immigration court. [*Id.* ¶ 32.]

ICE Chicago assumed physical custody of Rolle on or around June 28, 2017 [*id.* ¶ 40], and issued him an NTA the same day, [*id.* ¶ 41.] ICE Chicago never informed Rolle if, or when, it filed the NTA with an immigration court. [*Id.*] As of Rolle's intervention in this case on August 21, 2017 [see 20], no immigration court had scheduled a hearing in his case. [24, ¶ 42.] The Court infers from Plaintiffs' complaint that as of the date of the Court's approval of his intervention on September 5, 2017 [see 23], Rolle remained in custody at ICE Chicago's contract facility, Kenosha County Detention Center in Kenosha, Wisconsin. [*Id.* ¶ 40.]

Chavez filed the initial complaint in this case seeking to represent himself and a class of similarly situated individuals on March 27, 2017. [See 1.] Defendants filed a motion to dismiss the initial complaint for lack of jurisdiction and failure to state a claim on May 30, 2017. [See 11.] Shortly thereafter, Chavez filed an agreed motion to amend the complaint. [See 14–15.] The

---

[3] The Court infers from Plaintiffs' Second Amended Complaint that Chavez had been released from ICE Chicago's custody.

[4] An NTA is the charging document used in removal proceedings. [24, at 2 n.1.]

Court granted the motion [16], and Chavez filed his First Amended Complaint on June 6, 2017. [See 17.] On August 21, 2017, Rolle moved to intervene. [See 21.] After the parties stipulated to his intervention [see 22], the Court granted the motion on September 5, 2017. [23.] Thus, on September 19, 2017, Plaintiffs filed their Second Amended Complaint (the "Operative Complaint"). [See 24.] The Operative Complaint brought claims against Defendants for failing to meet their obligations to Plaintiffs under the INA (Count I) and violating Plaintiffs' Fourth and Fifth Amendment rights (Counts II–III). [See *id.*] Like the initial complaint, the Operative Complaint also sought to represent the following class:

> All persons who are detained under the authority of ICE within the Chicago Area of Responsibility, where ICE has not initiated removal proceedings by filing a Notice to Appear with the immigration court and has not initiated another form of removal proceedings.

[*Id.* ¶ 45.]

Defendants then filed the instant motion to dismiss, arguing that the Court lacks jurisdiction or, in the alternative, that the Operative Complaint fails to state a claim on which relief can be granted. [See 27, 27-1.] Plaintiffs filed a response [34], two briefs regarding supplemental authority [40, 45], and Defendants have filed a reply [54].

## II. Legal Standard

Defendants have moved to dismiss Plaintiffs' Second Amended Complaint [24] under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6).

A Rule 12(b)(1) motion seeks dismissal of an action for lack of subject matter jurisdiction. If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)

(en banc), overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). In ruling on the motion, a district court may also look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists. *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir.2007). The party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). The factual allegations in the complaint also must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Evaluating whether

a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

## III.  Analysis

### A.  Subject Matter Jurisdiction

As a threshold matter, Defendants argue that the Court lacks jurisdiction on three grounds: (1) standing, (2) mootness, and (3) the jurisdiction stripping provision of the INA.  [27, at 6–12.] For the reasons explained below, the Court concludes that it has jurisdiction over Plaintiffs' suit.

#### 1. Standing

Article III of the Constitution confines federal courts to adjudicating actual cases or controversies.  U.S. Const. art. III, § 2.  For case-or-controversy standing under Article III, a plaintiff must allege: (1) an injury in-fact; (2) fairly traceable to the defendant's action; that is (3) capable of being redressed by a favorable decision from the court.  *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 514 (7th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  The asserted injury must be both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  *Lujan*, 504 U.S. at 560.  Moreover, a plaintiff must demonstrate standing separately for each form of relief sought.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

There is no question that when this litigation began, Chavez had standing to challenge the circumstances of his detention by ICE.  ICE Chicago assumed physical custody of Chavez on or around March 9, 2017 [1, ¶ 28], and did not release him until June 8, 2017, [27-2].  Accordingly, Chavez remained in ICE custody when he filed this putative class action on March 27, 2017.  [See 1.]  Assuming his claims are true, the circumstances of this detention caused Chavez to suffer a

7

concrete, actual injury, traceable to the Defendants' conduct and redressable by the declaratory and injunctive relief he seeks. [24, ¶¶ c–f.]

Similarly, when this Court approved Rolle's motion to intervene on September 5, 2017 [26], he remained in ICE custody, [see 27-3]. Rolle's detention also allegedly caused him to suffer a concrete, actual injury, traceable to Defendants' conduct and redressable by the requested declaratory and injunctive relief.

Defendants assert that Plaintiffs lack standing because both had been released by the time they filed the Operative Complaint [24] on September 19, 2018. [27-1, at 6–8.] Defendants are partially correct. As the Seventh Circuit reaffirmed in *Parvati Corp.*, standing must be present at all stages of the litigation. 630 F.3d at 516 (citing *Korczak v. Sedeman*, 427 F.3d 419, 420 (7th Cir. 2005)). But when a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is actually one of mootness. *Id.* (citing *Friends of the Earth*, 528 U.S. at 189). Mootness is "the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth*, 528 U.S. at 189. Defendants are therefore correct that when ICE Chicago released Plaintiffs, they no longer had an actual or imminent injury that the Court could redress in their favor and their claims became moot. But that simply transforms the inquiry, as Plaintiffs assert that their claims fall within the "inherently transitory" exception to mootness.

## 2. Inherently Transitory Exception

Generally, a case is moot if the plaintiff seeking injunctive relief is no longer subject to the conditions that formed the basis of his complaint. *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010). The fact that a plaintiff filed for class certification while party to a live controversy will

not alone justify continuation of the cause of action upon the termination of the named plaintiff's claims prior to the certification of the class. *Id.* But, "timely filing for class certification can save a cause of action if it falls within the exception to the mootness announced in *Gerstein v. Pugh*." *Id.* (citing 420 U.S. 103 (1975)). The question is whether Plaintiffs' claims are so "inherently transitory" that it is uncertain that any member of a putative class could maintain a live controversy long enough for the class to be certified. *Id.* If so, the case is not moot for the purpose of class certification.

A claim must meet two elements to qualify as "inherently transitory." First, it must be uncertain that any individual's claim will remain live long enough for a court to certify the class. *Olson*, 594 F.3d at 582 (citing *Gerstein*, 420 U.S. at 110 n. 11). In *Olson*, for example, the Indiana Department of Corrections's complete discretion over the duration of the plaintiff's incarceration—and therefore his claim—created the very uncertainty that made the inherently transitory exception applicable. *Id.* at 583. A court in this district has held that the same is true for immigration detainees given that ICE officials have sole discretion over the length of their detention. *Moreno v. Napolitano*, 2012 WL 5995820, at *7 (N.D. Ill. Nov. 30, 2012).

Like the defendants in *Olson* and *Moreno*, ICE Chicago had complete discretion over the duration of Plaintiffs' detention and therefore their claims. As Plaintiffs explain, and Defendants do not dispute, "a detained individual has no control over how long Defendants will detain him before initiating removal proceedings, finally bring[ ] him before a judge, or release[e] him altogether." [34, at 8.] As in *Olson*, this uncertainty is "precisely what makes the 'inherently transitory' exception applicable in this case." 594 F.3d at 583.

Plaintiffs' claims also meet the second element of the inherently transitory exception—the existence of a constant class of persons suffering the deprivation complained of in the complaint.

*Olson*, 594 F.3d at 582.  To meet the second element, Plaintiffs must show that the claim is likely to recur with regard to the class.  *Id.* at 584.  In *Olson*, the fact that fifty-three other prisoners filed affidavits outlining similar problems to that of the lead plaintiff supported the Court's holding that the plaintiff had met the second requirement of the inherently transitory exception.  *Id.*  Similarly, in *Moreno*, the fact that ICE issued thousands of detainers made it likely that a constant class of persons would suffer similar harms to the plaintiffs.  2012 WL 5995820, at *7.

Here, Plaintiffs allege that a significant percentage of the individuals detained by ICE Chicago suffer under the same circumstances giving rise to their claims on a daily basis.  [24, ¶¶ 7, 47.]  Defendants do not deny these allegations, but rather assert that the exception does not apply because dismissal of the action would not deprive the putative class members of the opportunity to seek relief.  [52, at 6.]  For the reasons explained below, the Court disagrees with Defendants' argument that this court is the improper forum for these challenges.  Moreover, the fact that Plaintiff class members could seek relief in a different forum is not part of the analysis.  Because Plaintiffs have alleged the circumstances giving rise to their own claims are likely to reoccur frequently, this case meets the second requirement of the inherently transitory exception to the mootness doctrine.

### 3.  Channeling Provisions of the Immigration and Nationality Act

Finally, Defendants argue this action must be dismissed under Rule 12(b)(1) because Congress stripped federal district courts of jurisdiction over Plaintiffs' suit.  [27-1, at 8.]  Pursuant to the Real ID Act of 2005, "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statuary provisions, arising from any action taken or proceeding brought to remove an alien from the United States shall be available only in judicial review of a final [removal] order."  8 U.S.C. § 1252(b)(9).  According to Defendants, this

suit necessarily challenges ICE's determination of whether, when, and how to commence removal proceedings, and is therefore prohibited under § 1252(b)(9). [27-1, at 12.] Conversely, Plaintiffs assert that because this case only involves the circumstances surrounding the putative class's detention in the absence of removal proceedings, § 1252(b)(9) does not apply. [34, at 10.] The Supreme Court's recent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), resolves this issue in favor of Plaintiffs, at least on the basis of the facts alleged in their complaint.

In *Jennings*, the plaintiffs sought certain procedural rights—specifically periodic bond hearings—during their detention for immigration proceedings. 138 S. Ct. at 836. Before addressing whether the plaintiffs were entitled to such hearings, the Court examined whether § 1252(b)(9) deprived the Court of jurisdiction. *Id.* at 839. On the basis of the plurality opinion by Justice Alito, joined by Chief Justice Roberts and Justice Kennedy, and the opinion of the three dissenting justices concurring in the result,[5] a majority of the Court concluded it did not. *Id.* at 839, 876.

As the plurality explained, because the *Jennings* plaintiffs were not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "even challenging any part of the process by which their removability [would] be determined," § 1252(b)(9) did not present a jurisdictional bar to the plaintiffs' case. 138 S. Ct. at 841. Justice Alito cautioned that a more expansive reading of the "arising from" language in § 1252(b)(9) could result in such "staggering results" as the prohibition of a detainee's hypothetical *Bivens* claim. *Id.* at 840. The plurality also pointed to the Supreme Court's narrow interpretation of 8 U.S.C. § 1252(g)—which held that provision's language to include just the three

_____

[5] In his dissent, Justice Breyer, joined by Justices Ginsburg and Sotomayor, adopted an even narrower scope for § 1252(b)(9) than Justice Alito. *Id.* at 877. The dissent would have narrowed § 1252(b)(9) to only those cases seeking the review of an order of removal under § 1252(a)(1). Justice Kagan did not participate in the decision of the case.

specific actions listed in the statute—for additional support. *Id.* (citing *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999)). As Justice Alito explained, "The question is not whether detention is an action taken to remove an alien but whether the legal questions [at issue] * * * arise from such an action." *Id.* at 841 n.3. In *Jennings*, the legal questions were too remote from the actions to fall within the scope of § 1252(b)(9). *Id.*

Justice Thomas's concurring opinion, by contrast, would have held § 1252(b)(9) bars any case arising out of an immigration detention—regardless of whether formal removal proceedings were ever instituted—because "detention is an 'action taken * * * to remove' an alien." *Id.* at 854– 55 (Thomas, J., concurring). But as Justice Thomas (joined only by Justice Gorsuch) acknowledged, theirs was the minority view. Consequently, the jurisdictional bar of § 1252(b)(9) does not apply to challenges regarding the conditions of one's detention, especially where, as here, the government never institutes formal removal proceedings. Because Plaintiffs—like the *Jennings* plaintiffs—only challenge the circumstances of their detention, § 1252(b)(9) does not apply.

In sum, the Court concludes that (1) Plaintiffs had standing at the outset of the lawsuit; (2) the inherently transitory exception to mootness applies; and (3) § 1252(b)(9) does not strip the Court of jurisdiction. Accordingly, the Court denies Defendants' motion to dismiss pursuant to Rule 12(b)(1).

### B.  Failure to State a Claim

In the alternative, Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Defendants argue that neither the INA nor the Constitution afford the protections that Plaintiffs assert.

## 1. Violations of Immigration and National Act (Count I)

In Count I of the Complaint, Plaintiffs allege that the INA requires Defendants to bring detainees before a judicial officer for a probable cause hearing "without unnecessary delay" upon their arrest. [See 24, ¶¶ 55–59.] The INA allows ICE officers to make warrantless arrests provided that the officer:

> has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2). The parties dispute the interpretation of the last phrase, "an officer of the service having authority to examine aliens as to their right to enter or remain in the United States."

Defendants argue that § 1357(a)(2) requires taking an alien before an ICE officer, not an immigration judge or other judicial officer. [27-1, at 12.] They point to DHS regulation 8 C.F.R. § 287.3(a), which requires ICE to provide a prompt probable cause examination "by an officer other than the arresting officer" for all aliens subject to warrantless arrest absent special circumstances. [*Id.* (citing 8 C.F.R. § 287.3(a)).] Moreover, Defendants maintain that "officer of the service" cannot refer to an immigration judge because ICE is part of DHS, while immigration judges remain employees of the Justice Department. [52, at 11 (citing, for example, *L.D.G. v. Holder*, 744 F.3d 1022, 1025–26 (7th Cir. 2014) (explaining the different agencies' jurisdiction)).] Finally, Defendants cite an opinion from the Central District of California, *Roy v. County of Los Angeles*, which explicitly held in a nearly identical case that the INA does not require a probable cause hearing by an immigration judge. 2017 WL 2559616, at *5 n.5 (C.D. Cal. June 12, 2017) ("[E]ven if § 1357(a) at one point required an immigration judge to review the probable cause

determination, it does not appear that it or the corresponding regulations include any such requirement today."). [6]

In response, Plaintiffs argue that Seventh Circuit precedent, the presumption against superfluous language, and the constitutional avoidance doctrine require probable cause hearings before an immigration judge or other judicial officer. [34, at 15–17.] For the reasons that follow, the Court concludes that Count I does not state a claim under the INA.

In *Arias v. Rogers*, the Seventh Circuit examined the then-existing statutory and regulatory scheme and determined that the term "officer of the service" in § 1357(a)(2) refers to a "special inquiry officer, also called an immigration judge." 676 F.2d 1139, 1142 (7th Cir. 1982) (citing 8 C.F.R. 242.8(a)). Since the *Arias* decision thirty-six years ago, however, immigration enforcement has been radically overhauled by Congress. In particular, the Homeland Security Act of 2002 completely dismantled the Immigration and Naturalization Service ("INS")—ICE's predecessor— and created a new cabinet level agency—the DHS—under which ICE now operates. *Taylor v. McCament,* 875 F.3d 849, 851 n.1 (7th Cir. 2017) (citing Pub. L. No. 107–296, 116 Stat. 2135).

Although the phrase "officer of the service" remains in the statute, construing it to refer to an immigration judge no longer makes sense in view of the revised scheme. As Defendants and *Roy* note, the provision cited by the Seventh Circuit in its opinion—8 C.F.R. 242.8(a)—no longer

---

[6] Defendants also assert the INA prohibits them from bringing an alien before an immigration judge less than 10 days after serving him with a notice to appear unless the individual requests an earlier hearing in writing. [27-1, at 12–13.] The Court agrees with Plaintiffs that 8 U.S.C. § 1229(b)(1) does not apply to an initial examination; rather, the statute only applies to the actual removal proceedings that begin when ICE files a notice to appear with the immigration judge. See *Hernandez v. I.N.S.*, 2010 WL 126179, at *1 (D. Kan. Jan. 11, 2010) (holding that § 1229(b)(1) is "part of the subchapter on removal proceedings to be conducted by an immigration judge for deciding deportability of an alien."). As Plaintiffs repeatedly assert in their operative complaint, the putative class never entered removal proceedings [24, ¶¶ 32, 41, 45], rendering § 1229(b)(1) inapplicable.

appears in the Code of Federal Regulations. 2017 WL 2559616, at *5 n.5 (citing 676 F.2d at 1142).[7] Moreover, as the court in *Roy* highlighted, § 287.3 now provides that, "[i]f the examining officer is satisfied that there is *prima facie* evidence that the arrested alien was * * * present in the United States in violation of the immigration laws, the examining officer will refer the case to an immigration judge." 2017 WL 25559616, *5 n.5 (quoting 8 C.F.R. § 287.3(b)). This language confirms that an examining officer and immigration judge are two separate individuals with different roles, as it would make no sense for an officer to "refer" the case to herself.

Nor is the qualifying statutory language in § 1357(a)(2) rendered superfluous by allowing ICE officers to conduct initial probable cause hearings. See *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (citations omitted). The complaint contains no allegations that an ICE examination officer lacks the authority to release the Plaintiffs—an authority § 287.3 implies they have. *Arias*, 676 F.2d at 1143 (citing 8 C.F.R. § 287). Logically, the "authority to examine aliens as to their right to enter or remain in the United States" must encompass an officer's authority to release an alien upon a determination that the alien in fact has a "right to * * * remain" in the country. And there is no dispute that both named Plaintiffs were released without their cases ever having been presented to an immigration judge. Thus, Plaintiffs' allegations do not demonstrate that any part of § 1357(a)(2) would be rendered superfluous.

Finally, Plaintiffs assert that the principle of constitutional avoidance requires the Court to adopt their interpretation of the statute. The Supreme Court has held that when "a serious doubt"

---

[7] While an identical provision now exists at 8 C.F.R. § 1240.41, that provision falls under Justice Department regulations, rather than those of the DHS. This further supports Defendants' contention that "officer of the service" can no longer refer to an immigration judge who are now fully independent of the "service."

is raised about the constitutionality of an act of Congress, "it is a cardinal principle that [a Court] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). As *Arias* itself explained, however, provided that the "officer of the service" has the authority to order the release of a detained alien, no constitutional issue arises:

> The statute and regulations do not define the authority of the special inquiry officer when an alien who has been arrested without a warrant pursuant to 8 U.S.C. § 1357(a)(2) is brought before him. But we assume (and perhaps 8 C.F.R. § 287.3 implies) that he has the same authority that a committing magistrate would have, and that the special inquiry officer is explicitly given in 8 C.F.R. § 242.2(b) when the arrest is pursuant to warrant, to order the release of one who is detained illegally. We are [ ] concerned with * * * the authority of the special inquiry officer to release a detained alien who was arrested without a warrant; since that authority is as broad as a committing magistrate's, the safeguards provided by the INS against illegal detention are constitutionally adequate.

676 F.2d at 1143. *Arias* therefore cannot stand for the proposition that "authority as broad as a committing magistrate's" requires that the examining officer be an immigration judge.

Nor do the cases cited by Plaintiffs, both of which arise in the criminal context, convince the court that its interpretation of § 1357(a)(2) would raise "serious doubt" as to the constitutionality of the statute. See, e.g., *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 316–17 (1972) (holding "Fourth Amendment freedoms cannot properly be guaranteed if domestic security surveillances may be conducted solely within the discretion of the Executive Branch"); *Shadwick v. City of Tampa*, 407 U.S. 345, 353–54 (1972) (holding that states may delegate the issuance of warrants to personnel other than judges and lawyers). For all of these reasons, Plaintiffs have not stated a claim under the INA.

### 2. Fourth Amendment Claims (Count II)

In Count II of the Complaint, Plaintiffs allege that Defendants' policies and practices violate the Fourth Amendment. [24, ¶ 61.] Defendants respond that Plaintiffs cannot state a claim

because the procedures required in the criminal context under the Fourth Amendment do not apply to the civil administrative process of deporting removable aliens. [27-1, at 14.] The question boils down to whether the strict requirements of *Gerstein* and *County of Riverside* apply in the immigration context.

The Fourth Amendment prohibits "unreasonable searches and seizures" by federal agents. U.S. Const. amend. IV. As part of that prohibition, Seventh Circuit precedent and federal law require immigration officers to have probable cause before detaining an individual due to suspicions about his or her immigration status. *U.S. v. Cantu*, 519 F.2d 494, 496 (7th Cir. 1975) (holding the words "reason to believe" in § 1357 "are properly taken to signify probable cause"). "To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy," the Supreme Court has required in the criminal context "that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh*, 420 U.S. 103, 113 (1975). Though such a determination often occurs before an arrest, the Fourth Amendment's requirements may also be met through a "timely judicial determination of probable cause" after an individual's initial seizure. *Id.* at 113–14, 126. Any determination within 48 hours is a *per se* "timely judicial determination of probable cause," while the government must prove the reasonableness of any determination after 48 hours. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

*Gerstein* and *County of Riverside* addressed the issue of whether and when initial determinations of probable cause in criminal cases must be reviewed by a third party. In *Gerstein*, for example, the Supreme Court held that a prosecutor's assessment of probable cause was not itself sufficient to justify the accused defendant's continued detention to trial. 420 U.S. at 118–19. Likewise, in *County of Riverside*, the Court addressed how promptly criminal defendants must

receive that probable cause determination from a third party. 500 U.S. at 48. Neither case addressed what if any requirements were instituted by the word "judicial," nor explicitly examined what, if any, differences arise when the proceeding is civil, rather than criminal.

Plaintiffs assert that *Gerstein*'s requirement of "a fair and reliable determination of probable cause" applies to "any significant pretrial restraint on liberty." [34, at 20 (citing 420 U.S. at 125.] But the very quote cited by Plaintiffs—"pretrial restraint on liberty"—points out an important distinction between this case and *Gerstein*. As the Supreme Court has explained, "[d]eportation is not a criminal proceeding and has never been held to be punishment. No jury sits. No judicial review is guaranteed by the Constitution." *Carlson v. Landon*, 342 U.S. 524, 537 (1952); see also *Rhoden v. United States*, 55 F.3d 428, 432 n.7 (9th Cir. 1995) (per curiam) (distinguishing the "context of a criminal arrest" from civil immigration detentions for Fourth Amendment analysis); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("Consistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing."); *Chavez-Raya v. Immigration & Naturalization Serv.*, 519 F.2d 397, 401 (7th Cir. 1975) ("'And while an alien is entitled to due process in the deportation proceedings * * * such proceedings 'are not subject to the constitutional safeguards for criminal prosecutions.'") (citations omitted).[8]

---

[8] While Plaintiffs allege that they are American citizens, they do not explain how that fact changes the analysis. [24, ¶¶ 34, 37; 34, at 19–20.] If Defendants should have known or later learned that Plaintiffs were citizens and still refused to release them, Plaintiffs could have a *Bivens* claim for the violation of their personal constitutional rights. See e.g., *Lyttle v. United States*, 867 F.Supp.2d 1256, 1281 (M.D.Ga. 2012) ("[A]n ICE officer who actively participates in the detention and/or removal of a person who he knows to be a U.S. citizen, or upon minimal investigation would discover is a U.S. citizen, would be deemed to know that such conduct clearly denies that person liberty without due process of law. Consequently, any such officer would not be protected by qualified immunity.") Nothing in Plaintiffs' allegations, however, suggests they seek to represent a class of American citizens who have been mistakenly or maliciously detained by ICE with full knowledge of the detainee's citizenship. [24, ¶¶ 45–54.]

*Schall v. Martin*, 467 U.S. 253 (1984), does not extend *Gerstein* to civil proceedings.  First, the quasi-criminal juvenile delinquency proceedings at issue in *Schall* bear a far greater resemblance to adult criminal proceedings than to the immigration proceedings at issue here.  467 U.S. at 274.  As the Supreme Court noted, the detentions at issue in *Schall* were explicitly to "protect[ ] both the juvenile and society from the hazard of pretrial crime."  *Id.*  Second, the Court cited *Gerstein* in support of the assertion that the Court should not require certain procedures in every context, but rather should allow states flexibility in determining what process a given situation requires.  *Id.*

Similarly, the official statements of the INS do not show that the INS adopted *Gerstein* through its rule-making.  In a 1994 Final Rule Statement, the INS acknowledged in reference to comments related to judicial precedent and other policy standards that addressed "arrest and post-arrest procedures," that it was "clearly bound by such interpretations, including those set forth in *Gerstein v. Pugh*, 420 U.S. 103 (1975)."  INS, Final Rule-Making, "Enhancing the Enforcement Authority of Immigration Officers," 59 FR 42406-01, 42411 (1994).  While in isolation that language could support Plaintiffs' position, the section in which it occurs addressed 8 C.F.R. § 287.5(c) ("Power and authority to arrest") and § 287.8(c) ("Conduct of arrests").  Importantly, § 287.8(c)(vi) reads, "Every person arrested and charged with a criminal violation of the laws of the United States shall be brought without unnecessary delay before a United States magistrate judge, a United States district judge or, if necessary, a judicial officer."  The INS statement does not address § 287.3, the regulation of primary interest in this case.  Thus, the Court is not convinced that the INS extended *Gerstein*'s requirements to warrantless detention unaccompanied by criminal charges.

The overwhelming weight of authority supports Defendants' position that a non-judicial executive officer may make determinations of probable cause in the immigration realm. The historical development of immigration proceedings laid out by Justice Frankfurter in *Abel v. United States* demonstrates the long-standing belief that the Fourth Amendment permits civil immigration detention notwithstanding that administrative officers and not neutral magistrates make the probable cause determinations. 362 U.S. 217, 232-37 (1960). As Plaintiffs point out, Justice Frankfurter did acknowledge that the legitimacy of the warrant for Abel's arrest was not properly before the court. See 362 U.S. at 230 (noting that Abel had not raised the legitimacy of the administrative warrant before the court of appeals). But the Court did in fact examine the constitutionality of his arrest warrant, noting, "In the presence of this impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation, petitioner's disavowal of the issue below calls for no further consideration." 362 U.S. at 234. Despite Plaintiffs' claims to the contrary [34, at 22-23], the Supreme Court in *Abel* implicitly affirmed that executive officers may issue warrants, and by extension examine probable cause after an arrest. See also, *Arias*, 676 F.2d at 1143 (noting an individual who has been detained under an administrative warrant and placed into removal proceedings may not bring a habeas claim and may only pursue the remedies that Congress and the INS have established to test the legality of their detention).

More recent case law further supports Defendants' position that the determination of probable cause by a member of the executive branch is sufficient under the Fourth Amendment in the immigration context. See e.g., *United States v. Tejada*, 255 F.3d 1, 4 (1st Cir. 2001) (holding that detention under the INA is civil and does not implicate the requirement that a magistrate evaluate the detention within 48 hours of arrest); *United States v. Encarnacion*, 239 F.3d 395, 398

n.2, 400 (1st Cir. 2001) (holding Fed. R. Crim. Pro. 5(a), and by extension the Fourth Amendment's requirements laid out by *Gerstein* and *County of Riverside*, inapplicable to cases under § 1357(a)(2)); *Roy*, 2017 WL 2559616, at 10 ("the Court must follow the precedent finding that the Fourth Amendment does not require judicial review of ICE officers' probable cause determinations").

Seventh Circuit precedent does not call for a different result. In *Arias*, two individuals were illegally arrested and then detained by immigration services. 676 F.2d at 1141. Both filed habeas petitions, which the district court denied on the basis that that the commencement of removal proceedings against them had deprived the court of jurisdiction. *Id.* In determining whether the district court could address the plaintiffs' habeas petitions, the Seventh Circuit examined the protections afforded those arrested without warrant pursuant to § 1357(a)(2). *Id.* at 1142–43. As explained above, in examining those protections, the court of appeals held that because the examining officer had the same authority as a committing magistrate—the power to order the release of one who is detained illegally—"the safeguards provided by the INS against illegal detention were constitutionally adequate." 676 F.2d at 1143. Thus, under the standard in *Arias*, an officer need only have the authority to release Plaintiffs to pass constitutional muster; he need not be a neutral and detached judicial officer.

Plaintiffs assert that a prompt post-arrest determination of probable cause by anyone other than a detached and neutral judicial officer such as an immigration judge violates the Fourth Amendment. [24, ¶ 61.] They do not challenge the length of their detentions. Nor do Plaintiffs allege that they never received any kind of probable cause hearing. Such allegations would call for a different analysis. See *Rivas v. Martin*, 781 F. Supp. 2d 775, 780 (N.D. Ind. 2011) (holding detention by a state law enforcement agency for more than the 48 hours required by an immigration

detainer violated plaintiff's right to a prompt determination of probable cause);[9] *Tejada*, 255 F.3d at 4 ("aliens arrested for status offenses are not without protections from excessively long detentions"). But, as in *Roy*, those are not the allegations before the court.

Congress has determined that detention pursuant to ICE officers' probable cause determinations and examinations by ICE officers is sufficient. The only precedent cited by Plaintiffs that may support a different result, *Arias*, suggests a constitutional infirmity only if the ICE officer who conducts the post-arrest determination of probable cause lacks the authority to order a detainee's release. 676 F.2d at 1143. Because Plaintiffs have not alleged that only a neutral judicial officer has the authority to order their release, they have not stated a claim under the Fourth Amendment.

### 3. Fifth Amendment Claims (Count III)

The parties agree that Plaintiffs allege both procedural and substantive due process claims under the Fifth Amendment in Count III of the Complaint. [27-1, at 20–25; 34, at 25–30.] Because Plaintiffs' claims are best analyzed under the Fourth Amendment—which provides an explicit textual source of protection—the Court agrees that Plaintiffs' substantive due process claims collapse into the previous Fourth Amendment analysis.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [those] claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 (1998) (quoting plurality opinion in *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Here, Plaintiffs clearly believe that the Fourth Amendment provides the relevant standard for determining whether Plaintiffs must receive a probable cause

---

[9] Despite Plaintiffs' assertions [34, at 21], nowhere in the opinion did the *Rivas* court require a "judicial determination" of probable cause within 48 hours of an immigration arrest.

hearing before a neutral and disinterested judicial officer. See *supra* Section III(B)(2). Consequently, the arguments regarding the Fifth Amendment's substantive due process protections must collapse into the Fourth Amendment analysis. The Fourth Amendment does not, however, preclude Plaintiffs' claim for procedural due process to which the Court now turns.

To state a procedural due-process claim, a plaintiff must allege (1) the deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). Here, Plaintiffs clearly meet the threshold inquiry given that their liberty is at stake. See U.S. Const. amend. V ("no person shall be deprived to life, liberty, or property, without due process of law"). Moreover, Defendants do not dispute that aliens are entitled to procedural due process in removal proceedings. [27-1, at 20 (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993).] The only question is whether the Fifth Amendment requires an immigration judge or other judicial officer—rather than an ICE officer—to conduct Plaintiffs' probable cause evaluation and provide certain information regarding the protections afforded them.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). The Fifth Amendment's requirements are flexible, however, and vary from situation to situation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). For example, the Supreme Court has noted that "in the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976). Thus, to determine what process is due, the Supreme Court has identified three factors a court must weigh to determine whether additional due process is required in any given situation: (1) the nature of the private interest that will be affected; (2) the comparative risk of an erroneous deprivation of

that interest with and without additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail. *Eldridge*, 424 U.S. at 335.

Regarding the first factor, Defendants do not dispute that Plaintiffs' liberty is at issue. [See 27-1, at 20–22.] Such an interest certainly requires significant procedural protections; however, Congress has significant discretion to determine what process is due in the immigration sphere. See *Diaz*, 426 U.S. at 79–80.

In examining the second *Mathews* factor, the Court must consider "the fairness and reliability of the existing * * * procedures, and the probative value, if any, of additional procedural safeguards." 424 U.S. at 343. Plaintiffs argue that without review before a neutral and detached immigration judge, there is a significant risk that an individual who is not deportable, or otherwise eligible for release, will be confined for an extended period. [34, at 26.] Plaintiffs point to their own experience as U.S. citizens who could not be deported as evidence of that risk. [*Id.*] Nowhere in their operative complaint, however, do Plaintiffs allege facts that show it is plausible that a hearing before a neutral and detached judicial officer could or would have resulted in a different outcome. Rather, Plaintiffs simply point to the fact that they were both detained for significant amounts of time and state that their detention demonstrates that there is a high risk of "erroneous deprivation." Their detention, Plaintiffs argue, shows that it is at least plausible Defendants' policies and practices violate the Fifth Amendment's due process requirements. [*Id.* at 28.]

As Defendants point out, however, 8 U.S.C. § 1357(a)(2) already requires ICE to make a custody and bond determination shortly after an individual's warrantless arrest. See 8 C.F.R. § 287.3(b). At that point, the examining officer must advise the individual "of the reasons for his or her arrest and the right to be represented at no expense to the Government," provide him or her

with a "a list of the available free legal services provided by organizations and attorneys * * * located in the district where the hearing will be held," and "advise the alien that any statement made may be used against him or her in a subsequent hearing." 8 C.F.R. § 287.3(c). Furthermore, if the examining officer denies bond to the detained individual, the detainee may request a custody redetermination before an immigration judge at any time before the issuance of a final removal order. 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1).

As noted above, Plaintiffs do not allege that they never received a hearing with an ICE examining officer, nor do they provide any factual allegations or explanation for why the review by a judicial officer rather than an ICE officer would reduce the likelihood of erroneous deprivations of liberty. None of the cases cited by Plaintiffs to support the notion that judicial review is "essential as a check on both mistake and power" address probable cause hearings. See, e.g., *Corley v. United States*, 556 U.S. 303, 309, 320 (holding Congress did not statutorily abrogate the exclusionary rule with regard to evidence obtained in violation of Fed. R. Crim. Pro. 5); *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980) (holding an impartial and disinterested tribunal is required in adjudicative proceedings). Plaintiffs also cite numerous cases for the proposition that notice and the opportunity to be heard must be granted at a meaningful time and in a meaningful manner [34, at 27 (collecting cases)], but nowhere in the operative complaint do they allege facts that suggest why or how the statutorily required procedures set out above are insufficient or how a judicial officer would be superior.[10] Consequently, the Court finds Plaintiffs have not alleged

---

[10] In their response, Plaintiffs appear to suggest that Rolle never appeared before anyone during his detention. [34, at 27 ("Indeed, Mr. Rolle was held for *54 days* without any opportunity to be heard at all—much less before a neutral judicial officer.") (emphasis in original).] However, Plaintiffs' operative complaint states that "[ICE Chicago] has not brought [Rolle] before a judge to understand the charges against him and receive important advisals regarding his due process rights, among other procedural protections." [24, ¶¶ 33, 44.] Thus, while the complaint alleges that Rolle was not brought before a "judge," it does not allege that he was not brought before any government official—including, for example, an examining "officer of the service," which under today's immigration scheme is DHS/ICE.

facts that show there is a high risk that Plaintiffs will be erroneously deprived of liberty without the additional procedural safeguards they seek.

The third factor—whether ICE would be burdened by additional procedural protections—also weighs against Plaintiffs' claims. As explained above, federal law already requires an examining officer to provide all the items sought by the Plaintiffs—a probable cause hearing, information regarding the charges against them, information about their due process rights, and a bond hearing. Given Congress's broad power over naturalization and immigration, *Diaz*, 426 U.S. at 79–80, the fact that statutorily required procedures already provide for the safeguarding of Plaintiffs' rights means that additional procedures would certainly burden ICE. See, e.g., *Ali v. Achim*, 342 F. Supp. 2d 769, 775 (N.D. Ill. 2004) (holding agency would be burdened by additional protections given the preexisting procedures already provided for the safeguarding of his rights). Thus, the third factor weighs heavily against the imposition of additional procedures, especially considering the possible costs. [See 27-1, at 22–23.]

The fact that ICE allegedly detained Plaintiffs for 18 and 54 days respectively without filing their cases before an immigration judge raises serious questions about the efficiency of ICE's procedures. Plaintiffs understandably feel that they should have been released, released on bond, or formally charged on a more expeditious basis, and they may well have a point for consideration by Congress and the Executive Branch. Nonetheless, as explained above and in Section III(B)(2), the Supreme Court and other courts repeatedly have held that the political branches have wide latitude to determine what procedures immigration detainees must be afforded. Consequently, based on the allegations currently before the Court, Plaintiffs have not stated a claim that the statutory and regulatory procedures in place violate Plaintiffs' right to procedural due process under the *Mathews* due process calculus.

## IV.     Conclusion

For the forgoing reasons, Defendants' motion [27] is granted.  Counts I-III of the Operative Complaint are dismissed for failing to state a claim upon which relief can be granted.  Plaintiffs are given until October 29, 2018 to file an amended complaint consistent with this opinion if they choose to do so.  This case is set for a further status hearing on November 13, 2018 at 9:00 a.m.

Dated: September 28, 2018

_____
Robert M. Dow, Jr.
United States District Judge